WILL COPPER v. THE STATE.

No. 7437.   Decided April 11, 1923.

**1.—Assault to Murder—Charge of Court—Insult to Female Relative.**

Where, upon trial of assault to murder, the evidence showed that from a course of continued aggravating conduct of the party injured and his boy, defendant's mind was inflamed, and that to what his son had told him of the fight that morning, and the report of threats of the injured party was added the insulting statement regarding defendant's mother, and that this made him so angry that he shot the injured party in that condition, the court should have submitted in his charge this phase of the case and that such would reduce the crime to aggravated assault. ·

**2.—Same—Adequate Cause—Charge of Court—Insult to Female Relative.**

Where the court in his charge on adequate cause presented only general definitions, and defendant's reliance was had on the insulting statement on the part of the party injured concerning defendant's mother, and defendant requested a charge thereon and excepted to its refusal and the main charge, the same was reversible error.

**3.—Same—Bill of Exceptions—Evidence—Adequate Cause.**

Where defendant's bill of exceptions showed the refusal of the trial judge to allow him to testify that when the injured party said to him, "You are just like your damned old mammy," it made him so mad that he was incapable of controlling himself and immediately shot the injured party, the same was reversible error.

**4.—Same—Charge of Court—Malice Aforethought.**

Where, upon trial of assault to murder, the court charged the jury that malice aforethough is the voluntary and intentional doing of an unlawful act by one of sound memory and discretion, etc., the jury in the instant case may well have believed that the accused shot with malice aforethought, when upon a proper charge under the same facts, they would only have convicted for aggravated assault, which defendant properly presented in his requested charge, which was refused by the court, and presents error.

**5.—Same—Aggravated Assault—Insult to Female Relative.**

Where, upon trial of assault to murder, defendant requested a charge submitting the issue as to whether in case the jury believed that the injured party said to him, "You are just like your damned old mammy," under all the circumstances of this case these were such insulting words directed at a female relative as to reduce the offense to aggravated assault, which requested charge was refused, the same is reversible error.   Following Walker v. State, 89 Texas Crim. Rep., 83.

**6.—Same—Evidence—Cross-Examination—Whole Conversation.**

While the injured party was testifying for the State, he was asked on cross-examination what he said to defendant after the offic—s came, and he replied that he said Bill Cooper was a dirty low down son-of-a-bitch, etc. Afterward and while the sheriff was testifying for the State, he was asked what he heard defendant say at the time the injured party came up, and over objection was allowed to say that defendant said to the injured party that he went down there to kill him, to w— ch defendant excepted as he was under arrest.   *Held*, that the whole conversation could be introduced, and there was no error.

Appeal from the District Court of Wise. Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*M. W. Burch,* for appellant.—On question of court's charge on adequate cause, Rogers v. State, 149 S. W. Rep., 129; Williams v. State, 15 Tex. Crim. App., 617; Waddlington v. State, 19 id., 274; McLaughlin v. State, 10 id. 340.

On question of insulting language to female, Davis v. State, 155 S. W. Rep., 547; Porter v. State, 132 id., 935; Moore v. State, 237 id., 931; Cox v. State, 126 id., 886; Walker v. State, 89 Tex. Crim. Rep., 76.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Wise County of assault to murder, and his punishment fixed at two years in the penitentiary.

Brooks, a negro preacher, lived next door to appellant, also colored. There were boys in each family, and occasionally they fought. The families were not on the best of terms. Appellant's father died when he was a small boy and he and his mother constituted the family and lived together for many years, the evidence showing much affection between the two. Some years before the shooting which led to this prosecution one of the boys of Brooks had a fight of some kind with appellant's old mother in which, if we understand the record, he got her down on the ground and either "stamped" her with his feet or jumped up and down on her stomach with his knees. From injuries then inflicted, according to defense witnesses, the old woman suffered until her death some two years later. She had opposed Brooks as pastor of the First Baptist Church, Colored, of Decatur, because as he said he believed in the "ministry of restriction," and having carried her opposition to the extent of calling Brooks' wife ugly names, the old woman was excluded from the church. According to the defense witnesses threats to do various members of appellant's family as "Son done old Margey" were made by Brooks and his boys every now and then and communicated. A witness swore that not long before the shooting Brooks threatened to cut appellant in two and this was also communicated. On the morning of the day of the shooting two of the Brooks boys "jumped on" the boy of appellant, and according to the latter's testimony both were bigger than he and while the fight was in progress Dick Brooks said that "Daddy was going to get appellant just like Son got old Margey." Appellant's boy after the fight went to where his father

and mother worked at Mr. Lillard's and told them what had occurred. This shooting took place about thirty minutes after appellant, his wife and boy got home.

Brooks was in his barn and appellant walked to the fence separating the two places and told a son of Brooks that he wished to see his father. Brooks came out and to the fence. The State's theory, supported by Brooks and to some extent by his son, is that appellant wanted to know if Brooks could not keep his boys from fighting appellant's boy and Brooks replied, "Bill, you have got a bad boy;" that appellant with an oath wanted to know if Brooks could not stop those boys from fighting his boy, and that Brooks said he did not know if he could stop it or not,—and appellant with another oath said he could stop it and pulled an automatic pistol and shot four times at Brooks who-took to his heels, two shots taking effect in different parts of his body. Brooks went to a neighbor's and phoned for the officers, who came meeting appellant on their way, at which point Brooks also came up and out of some mild conversation occurring at this time in which preacher Brooks called appellant a low-down black son-of-a-bitch, arises some complaint made by appellant.

Appellant's theory, supported by his witnesses, was that when Brooks came toward him he had his hand in his pocket and that in the acrimonious exchange of words that followed Brooks said, "You are just like your damned old mammy," and that being already mad and of the opinion that Brooks was going to carry out the threats previously made and communicated, appellant pulled out his pistol and fired as fast as he could immediately upon the use of the above language. The learned trial judge submitted the law of murder, manslaughter, of self-defense and aggravated assault. The charge was excepted to as not giving the law applicable to the facts presenting manslaughter, and in this connection several special charges were asked and refused in which appellant sought to have the law applied to manslaughter as he deemed it finding support in the testimony. As applicable to manslaughter the court gave only the following:

"If you believe from the evidence beyond a reasonable doubt, that the defendant in the County of Wise and State of Texas, on or about the time charged in the indictment, with a deadly weapon, did unlawfully assault the said Y. B. Brooks, but at the time of making such assault the defendant was, by some adequate cause, as hereinafter explained, moved to such a degree of anger, rage, sudden resentment or terror as to render him for the time incapable of cool reflection, and in such a state of mind he committed said assault, and that such assault was not in defense of himself from an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, as that matter has been hereinbefore explained, then you will find the defendant guilty of an aggravated

assault, and assess his punishment at a fine not less than twenty-five nor more than one thousand dollars, or by imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment, as you may determine and state in your verdict.

You are instructed that any condition or circumstance capable of creating and which does create sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind for the time incapable of cool reflection, whether accompanied by bodily pain or not, may be adequate cause; and whether such adequate cause existed for such sudden passion (if any there was) it is for you to determine, and in determining this question as well as all other matters before you, you will consider all the facts and circumstances in this case.''

As we understand appellant's contention in this regard, it was that from a course of continued aggravating conduct on the part of Brooks and his boys, his mind was inflamed, and that to what his son had told him of the fight that morning and the report of threats of Brooks, was added the insulting statement regarding appellant's mother, which is above quoted, and that this fresh insult made him so angry that he shot Brooks in that condition of mind which ought to reduce his crime, if any, to aggravated assault. An exception was directed at the failure of the charge to inform the jury that if they believed that such language was used and that this added to prior threats of Brooks and insulting words or conduct on his part, created in appellant's mind such a degree of terror, etc., as to render it incapable of cool reflection, and that under the influence of such mental condition he shot Brooks, he would be guilty of no more than aggravated assault. In our opinion the charge should have affirmatively presented this issue.

Our statute, Article 1130 P. C., defines adequate cause as such as would produce that degree of rage, anger, etc., in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. An examination of the definition of adequate cause as given in the charge and quoted above, which presents the only definition given, will disclose that it is not in conformity with the statutory definition. Article 1132 names various matters which may be deemed adequate causes, among which are enumerated insulting words or conduct toward a female relative. Appellant excepted to the charge as given for its failure to affirmatively submit to the jury that an insult to a female relative would be adequate cause, and in this connection submitted several special charges in which he sought to have the jury told that same would be adequate cause. A further analysis of the charge of the learned trial judge as quoted above discloses that it only gave the most general definition of adequate cause and left the jury to their own conclusions and deductions as to what would

constitute same, and furnished them no standard by which they might go. In any case where reliance is had on some specific cause asserted as the basis for manslaughter passion causing the attack by the accused and this be supported by testimony, and such cause be not one of those rejected by Article 1131 of our Penal Code as insufficient,— if the accused be not satisfied with the general definition such as was here given, and requests an instruction to the effect that if the particular matter claimed to have caused such passion either alone or in conjunction with other acts and conduct of the injured party, did in fact produce in the mind of the accused such a degree of rage, resentment, etc., as to render his mind incapable of cool reflection, and that while in such passion he committed the act, it would be no more than manslaughter, it should be given or one submitting the affirmative issue.

Also in this connection appellant has a bill of exceptions to the refusal of the trial judge to allow him to testify that when Brooks said to him, "You are just like your damned old mammy," it made him so mad that he was incapable of controlling himself and immediately shot Brooks. The bill is approved without qualification and in our opinion presents error.

We note that the court's charge defining malice aforethought is as follows: "Malice aforethough is the voluntary and intentional doing of an unlawful act by one of sound memory and discretion, with the purposes, means and to accomplish the reasonable and probable consequences of it, done in a manner showing a heart regardless of social duty and fatally bent on mischief, the evidence of which is inferred from acts committed or words spoken."

The substance of this charge is condemned in Hays v. State, 14 Texas Crim. App. 330. We observe that manslaughter is both voluntary and intentional, as well as an unlawful killing, but it is not deemed a killing upon malice aforethought. The jury in a given case may well believe that the accused shot with malice aforethought when same be defined as was done by the court in this case, and may convict for an assault to murder upon such belief, when upon a proper charge under the same facts they would only convict for manslaughter. Appellant asked a charge more fully and appropriately defining malice aforethough, which was sufficient at least to call the court's attention to the error in the above charge.

Appellant also asked a special charge submitting to the jury the issue as to whether in case they believed that Brooks said to him, "You are just like your damned old mammy," under all the circumstances of this case this was such insulting words directed at a female relative as might and did produce in his mind that degree of rage, resentment, etc., which would reduce a homicide to manslaughter, and in such case they should find him guilty only of aggravated assault. In Walker v. State, 89 Texas Crim. Rep. 76, we said that

if the language used, claimed to be insulting to a female relative, be dubious, that is, not obviously insulting to such relative, the question as to whether it was of that character might be one for the jury under appropriate instructions.

While Brooks was testifying for the State he was asked on cross-examination what he said to appellant after the officers came, and he replied, "I said, Bill Cooper, you are a dirty lowdown son-of-a-bitch, any man who would call another out and shoot him like you did me." Afterward and while sheriff Malone was on the stand for the State he was asked relative to what he heard appellant say at the time Brooks came up, and over objection was allowed to state that appel-. lant said to Brooks, "I went down there to kill you," the objection being that appellant was under arrest and unwarned at the time. The ruling of the trial court in admitting said evidence is referable to Article 811 C. C. P., which declares that if part of a conversation be introduced by the opposite party. The matter is not made quite tion relating to the same subject matter or shedding light on it, may be introduced by the opposite party. The matter is not made quite clear by the bill of exceptions, but it appears that a statement by appellant that he went down to Brooks' to kill him would be admissible under the above rule as shedding light upon the statement of Brooks that any man who would call another out and shoot him as appellant did was appropriately described by the language used.

There are many other matters complained of in the record which will not likely occur upon another trial and which will not be further discussed in view of the fact that in our opinion for the errors above mentioned the judgment must be reversed and the cause remanded.

*Reversed and remanded.*