## WILLIAM PRUITT, JR. v. THE STATE.

No. 12875.　Delivered January 8, 1930.
Rehearing denied March 26, 1930.
Reported in 25 S. W. (2d) 870.

The opinion states the case.

*Baskett & DeLee* of Dallas, for appellant.

*William McCraw,* Crim. Dist. Atty. and *Andrew J. Priest,* Asst. Crim. Dist. Atty., both of Dallas, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—The offense is murder and the penalty death.

The deceased had accompanied a Miss Drennan to church on the Sunday evening of the tragedy. They returned home after services down one of the main streets of the City of Dallas and had stopped for a red signal light at a street intersection. A man came across the street, jumped in the car, told the young lady to move over and thrust himself into the car on top of her. He said to the deceased, "Keep still or I'll knock you over," whereupon deceased pushed

him off of her and out of the car, following him into the street. In the difficulty which ensued, appellant shot the deceased, killing him. Deceased was a boy about eighteen years old. Appellant was positively identified by Miss Drennan as the perpetrator of the crime. It is further shown by Miss Blanche Weaver, a waitress in a nearby cafe, that late that same afternoon appellant came into the restaurant and ate, asking her questions, the purport of which appears below. He was at that time wearing a black scarf or shawl. After the killing appellant fled down an alley in which a short time thereafter a black scarf or shawl was picked up and identified by Miss Weaver as the one worn by appellant. The killing of deceased was witnessed by one James Walker, a negro cook employed in a restaurant in the City of Dallas, who also identified appellant.

The defense of appellant was an alibi. The only disputed issue of fact, as we view the record, presented to the jury for determination was the identity of appellant.

The waitress mentioned above after testifying that appellant was in her employer's restaurant a few hours before the killing wearing a black shawl or scarf with a water wave stripe in it, was shown the scarf found in the alley. After describing it she was asked whether or not in her opinion it was the scarf seen by her on appellant in the restaurant, to which she answered in the affirmative and to which a general objection was made. It is argued that this called for the expression of an opinion by the witness on the issue to be decided by the jury. We cannot agree with this. The identity of appellant, not the scarf, was the jury issue. The scarf's identity was only one of the circumstances relied on by the State to establish the slayer's identity. Some diversity of opinion is said to exist as to whether testimony of the identity of a prisoner for example is the statement of a fact or the expression of opinion. The Courts having the latter view, which appear to include Texas, permit the expression of an opinion as to such matters. Underhill's Criminal Evidence (3rd Ed.), Sec. 108, and authorities there cited; Branch's P. C., Sec. 2483; Tate v. State, 35 Tex. Crim. Rep. 234. It has been many times held that a witness may state his best judgment or belief as to the identity of stolen property. Osgood v. State, 49 S. W. 94; Turner v. State, 48 Tex. Crim. Rep. 585; Harris v. State, 62 Tex. Crim. Rep. 235; Williams v. State, 63 Tex. Crim. Rep. 507. If there exists any real distinction between an expression of "opinion" as to the identity of property and the state-

ment of a "belief" on the same subject, it seems too elusive and shadowy to grasp. The above authorities, in our opinion, support the Court's action in admitting this testimony.

Of the witnesses who identified appellant as the slayer of deceased was one James Walker, a negro employed at Long's Cafe near the scene of the homicide at the time it occurred. Appellant on cross-examination subjected this witness to a rigid cross-examination as to his leaving his employment at the restaurant after the killing and working at the City Hall, where officers interested in the prosecution had obtained him a position. Upon redirect examination, in response to the State's questions, this witness answered that he changed positions because he was afraid to remain at work at the restaurant. Vigorous objection was made to this. The inference being left by appellant's examination that his reason for the change was perhaps an improper one, the witness was entitled to remove the imputation thus cast upon his motives by making the statement objected to.

Miss Blanche Weaver, a waitress at the restaurant above referred to, having testified to the presence of appellant at her employer's restaurant a short time before the killing and that she paid particular attention to him because he asked her what time was her busiest hour and what time they closed up at night, was then asked upon cross-examination by appellant whether or not she did not tell her employer the next morning that she paid particular attention to him because he came in and sat down at a table to eat and ate with his hat on. Having denied this, her employer was placed upon the witness stand by appellant and having testified to the statement denied by witness was thereupon asked by the State what she told him in that conversation, to which he answered that she said the man asked her what time was her busiest hours and what time was it over with and what time did we close up there, to which statement appellant objected because hearsay and immaterial and irrelevant. We regard the effect of the evidence brought out by appellant as showing that witness had made statements out of court differing from and somewhat contradictory to her testimony on the trial. Under such circumstances it was proper for the Court to permit the State to support her by proof that in the same conversation brought out by the appellant she made statements of the matter similar to the testimony given by her on the trial. The statement objected to was part of the very conversation brought out by appellant and tended to corroborate and sustain the witness after

the intended impeachment by appellant and was in our opinion clearly admissible. Branch's P. C., Sec. 181; Moore v. State, 31 Tex. Crim. App. 236; Burch v. State, 49 Tex. Crim. Rep. 13; McCue v. State, 170 S. W. 290.

Appellant's father, William P. Pruitt, Sr., testified for him on the trial of this case. On his cross-examination he was asked whether or not he was at the time under a complaint filed in the Justice Court of Dallas County charging him with the offense of perjury. The record shows that the grand jury convening after the filing of this complaint had neither adjourned, nor acted upon the charge and that same was still in existence. Under such circumstances the testimony was admissible. Brown v. State, 105 Tex. Crim. Rep. 605; McClure v. State, 100 Tex. Crim. Rep. 549; Redding v. State, 95 Tex. Crim. Rep. 644.

Appellant testified for himself as a witness. On cross-examination he was asked about several indictments then pending against him in robbery cases, the name of the person robbed being mentioned in each question. The appellant objected particularly to the naming of the injured party in the robbery cases. The Court qualified appellant's bill to show that these names, together with the date of the robbery, were specifically mentioned in order to identify the different transactions. It was clearly admissible as affecting the credibility of appellant as a witness to prove pending felony charges against him and if any sufficient reasons exist that made the naming of the injured party so prejudicial as to require a reversal, it is not shown in the bill. In view of the Court's qualification and particularly in view of the absence of any showing of special injury, the bill of exception fails to show reversible error.

Another bill is presented to the action of the District Attorney in asking appellant about his having been convicted in a robbery case. The Court sustained the objection and properly instructed the jury to disregard same. The question remained unanswered. The question was improper but in view of the action of the Court and the plain proof of guilt of appellant appearing in the record, we are not able to reach the conclusion that such error is shown as would require a reversal.

The Court's charge is under attack in many respects.

He instructed the jury:

"Malice in its legal sense denotes a wrongful act done intentionally without just cause or excuse."

Malice aforethought must exist by the express terms of the new murder statute to justify a penalty beyond five years in the penitentiary. If the Court's charge had stopped with the above definition, a serious question would be presented. However, immediately following it is this statement:

"Malice aforethought includes all those states of mind under which the killing of the person takes place, without any cause which will, in law, justify or excuse or extenuate the homicide. It is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts done or words spoken."

This sufficiently defined the term "malice aforethought" in our opinion. See recent case of Collins v. State, 299 S. W. 403, where the question was discussed and the authorities collated. Hayes v. State, 14 Tex. Crim. App. 330; Copper v. State, 94 Tex. Crim. Rep. 199. The Collins case, supra, will indicate the error to be avoided in the definition of malice aforethought and which we think was avoided in the instant case.

Finally it is argued that the Court erred in stating the minimum penalty of a killing upon malice aforethought to be five years, when in fact the law fixes the minimum at two.

The indictment was in two counts, the first charging a killing upon malice aforethought, and the second merely a voluntary killing. The Court authorized a penalty upon conviction under the first count of death or any terms of years in the penitentiary of not less than five and under the second count of not less than two nor more than five.

At the regular session of the Fortieth Legislature, which adjourned March 16, 1927, murder was redefined and a new penalty provided. These articles follow:

Art. 1256. "Whoever shall voluntarily kill any person within this State shall be guilty of murder. . . . "

Art. 1257. "The punishment for murder shall be death or confinement in the penitentiary for life or for any term of years not less than two."

Sec. 3a. "In all cases tried under the provisions of this Act, it shall be the duty of the court to define 'malice aforethought' and shall apply that term by appropriate charge to the facts in the case and shall instruct the jury that unless from all the facts and circumstances in evidence the jury believes the defendant was prompted and acted with his malice aforethought, they cannot assess the punishment at a period longer than five years."

It thus appears that one article of this statute permits the infliction of any punishment from two years to death for murder even if without malice aforethought, while another article of the same act prohibits the infliction of a penalty in excess of five years if there was lack of malice aforethought. Thus one portion expressly inhibits what another part permits. Construing the act literally, a slayer may murder his sleeping victim in cold blood and receive only two years, while one who killed the despoiler of his home under the heat of a passion which rendered his mind incapable of cool reflection might receive two and one-half times the punishment of the assassin just mentioned.

Faced with the difficult task of interpreting a law, concerning which the above is only one of its many incongruities, the trial court evidently construed it as defining two offenses with a provision for two different penalties. We are not inclined to agree with this but it seems unnecessary for us to pass expressly on the correctness of this interpretation, for as we view it, the error under discussion, if any, could not have harmed the appellant. We long since abandoned the old doctrine that any misstatement of the penalty whether injurious to the accused or not was reversible error. See case of Thompson v. State, 91 Tex. Crim. Rep. 234, in which Justice Hawkins discusses the question at length. In this case the extreme penalty was assessed, and was in our opinion supported by the evidence. There does not seem the slightest probability that a misstatement of the penalty in the respect mentioned could have in any way contributed to the size of the verdict. Art. 666, C. C. P., inhibits in substance a reversal for error in the charge unless calculated to injure the accused, or unless he has not had a fair and impartial trial. We regard the verdict as responsive to and justified by the evidence. If there could be said to exist a probability that this jury would have returned a verdict of less than five years if authorized by the Court, a different question would be before us. We may here say that the trial court did expressly authorize a penalty of two to five years if the jury believed the killing was without malice aforethought. This was rejected by the jury, and it seems wholly illogical to conclude that their verdict would have been different if they had been authorized to assess a penalty of less than five years provided the killing was upon malice aforethought.

The serious penalty in this case has caused us to carefully examine all of appellant's contentions. We have endeavored to patiently and carefully do so and have found no merit in any of them.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant's bill of exceptions 4 sets up that Miss Weaver, State witness, identified appellant as a customer upon whom she waited in a restaurant the afternoon preceding the homicide that night; that she testified that she paid close attention to him because he asked her what was their busiest time and what hour they closed. Cross-examined she said that she did not tell Stapleton the next morning that she paid particular attention to this man because he sat down and ate with his hat on which was unusual. Later, appellant put Stapleton on the stand and asked him if Miss Weaver did not tell him that she paid particular attention to said man "because he ate with his hat on at the table which was unusual," and that Stapleton replied that she did. It is further set out that on cross-examination of Stapleton the State asked him if he was sure concerning the statement Miss Weaver made, to which he said he was not. The State then asked him what she said to him in that conversation. The bill further recites that to this "Defendant objected, and the court overruled the objection," and witness said she told him she paid attention to the man because he asked her about what was their busiest time, etc. No reasons for or grounds of objection were stated. In his motion for rehearing appellant insists that we did not get the point, and that he asked Miss Weaver if she did not make the statement to Stapleton,—and prove by Stapleton that she did,—because she had said that she was struck by the color of the man's hair and eyebrows, and that proof that she said the man ate with his hat on would reflect on her opportunity to see and observe his hair and eyebrows. The argument is ingenious, but the record, as made by the bill, not only negatives the idea that any such reason was stated to the trial court as ground for the objection,— but the suggestion therein is very plain, viz.: that she did not tell the truth in her direct testimony when she said that her reason for close observation of said man was his question as to their busy time, etc., because forsooth she told Mr. Stapleton that her reason for such observance was because he ate with his hat on, this being unusual. There seems no room for debate over the proposition that appellant having brought out from Stapleton this impeaching declaration, the State had the right to the whole of that conversation

bearing on the same subject, or to a statement in any other conversation with Stapleton in which Miss Weaver made to him statements in consonance with her original testimony. See Elbert Taylor v. State, 87 Tex. Cr. Rep. 330. The case of Red v. State, 39 Texas Crim. Rep. 424, was participated in by the writer. We are of opinion that it is not in point. The facts stated to Sutherland, in that case, by D. C. Rogers and elicited from Sutherland by the State on cross-examination, were not such as to be corroborative of the testimony of Rogers, which was in effect attacked by Sutherland's direct testimony. The rule stated in the opinion in that case, however, is applicable to this case and is as follows:

"It is competent to impeach a witness by showing that he made a statement to some one else, different from that testified to by him on the trial, as to some fact or facts in regard to the matter inquired about. When so impeached, it is competent to support such witness by proving that shortly after the occurrence, and before any inducement to falsify his testimony, he had made statements similar to those testified to by him on the trial."

The court's charge on malice aforethought is again attacked, it being urged that we did not get appellant's point in regard to this objection also. He now states the grounds of his objection to be that the court gave two definitions of malice aforethought in one paragraph, one incorrect,—the other correct, and that this confused the jury. Collins v. State, 299 S. W. Rep. 403; Copper v. State, 94 Texas Crim. Rep. 199, and Hayes v. State, 14 Texas Crim. App. 330, are cited. The language of the charge herein is identical with that quoted in the Collins case, supra, and there held sufficient. In the Hayes case, supra, only a part of the definition of malice aforethought was given in the charge, and we held it not enough, and the opinion states that "such other ingredient" should have been included as is therein quoted,—which is given as part of the definition of malice aforethought in the instant case. In the Copper case, supra, the charge was so worded as to make it easily misunderstood, and the verdict and judgment in that case were such as to lead to the conclusion that it was misunderstood. We are unable to agree with the contention under discussion.

In asking appellant while a witness if he was not then under indictment in certain felony cases, the specification of the injured party by name in each such case inquired about, is not to be commended but rather condemned. Same might in some cases be followed up and made the basis of a showing of harm and injury, but

no such showing is here made. No details of any of said transactions further were inquired about.

Appellant admitted while a witness that a pistol shown him was his. It had been shown a State witness who swore that he saw the shooting, and declared that the pistol used by appellant looked just like the one now shown him. The State asked appellant while on the witness stand "Where were you when that gun jammed," and he said "4226 Tella St." There is a lengthy bill of exceptions to this. We do not find anything in the bill, or in the record as far as perceived, which otherwise suggests when or how the pistol was jammed or who jammed it, or that appellant was trying to use it in any way when it became jammed. To call for serious consideration the bill of exceptions itself must manifest the error complained of.

Mrs. Cornwell was permitted to testify to the condition of deceased immediately following his being shot, and to a conversation which partially indicated that he was not wholly conscious. We perceive no error in permitting the introduction of what deceased said as he lay struggling in death.

While we fully realize the gravity of the penalty inflicted by the jury in this case, the facts seem to fully warrant it. The other complaints made in the motion have each again been reviewed and are not deemed of sufficient importance to require that we write upon same.

The motion for rehearing will be overruled.

*Overruled.*