CLAUDE SPICER v. THE STATE.

No. 14363. Delivered January 27, 1932.
Rehearing Denied March 2, 1932.

The opinion states the case.

*Joe W. Taylor, W. H. Stewart* and *W. E. Davidson,* all of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, Presiding Judge.—The offense is murder; penalty assessed at confinement in the penitentiary for seven years.

This is the second appeal of this case. See Spicer v. State, 115 Texas Crim. Rep., 110, 28 S. W. (2d) 810.

The facts on the present appeal are not materially different from those on the former appeal. The conflict which resulted in the death of Martin Uptmor was described by Mrs. Spicer substantially as follows: While she was dancing with her husband, he and Uptmor bumped into each other. Uptmor invited the appellant to go outside. Uptmor and Spicer shook hands; then Mrs. Spicer and Uptmor shook hands. Uptmor then said to Spicer, "Let's go on the outside." Mrs. Spicer protested and said, "Let's don't have any trouble." Uptmor then struck her. He also struck Spicer in the face, reached in his pocket and pulled out a knife. Seeing that Spicer was about to be cut, Mrs. Spicer shot Uptmor.

Several of the state's witnesses testified that Spicer fired the shot.

Spicer's description of the encounter was that after the collision between the dancers, he said to Uptmor that it was an accident. Uptmor then struck Mrs. Spicer and knocked her down. He came at Spicer and cut him with a knife. A shot was then fired between Spicer and his wife. Spicer said: "I did not know exactly what happened after that. When Uptmor struck me in the face and cut me with the knife, I thought my life was in danger."

There was evidence that Spicer had some wounds on his body, and that he was treated by a doctor.

Bill of exception No. 1 presents in substance the following: In his testimony, the appellant disclaimed firing the shot which killed the deceased. On cross-examination he was pressed to say whether he fired in self-defense. His counsel interposed with the admission that the appellant did not shoot the deceased in self-defense. In the closing argument, counsel for the appellant (who made the admission) contended that the case was one of self-defense. In reply to the argument, state's counsel adverted to the admission stated.

No objection was made to the argument of state's counsel, nor was there a charge presented asking that his remarks be withdrawn. If there had been a request by way of a special charge that the jury by informed that the statement of counsel for appellant mentioned in the argument of state's counsel should not be regarded by the jury as a reason for rejecting the claim of self-defense, it might, with propriety, have been given to the jury. No such request, however, having been made, and the court having given to the jury an unqualified charge on the law of deslf-defense, and having instructed them that they should take the law of the case from the court, it is thought that the court committed no error in refusing, in response to the an exception to his charge, to advert in the charge on self-defense to the remarks of counsel for the state or those of counsel

for the appellant. From the course of the trial, as reflected by the record, the jury could not have been misled touching their obligation to accord the appellant the benefit of the law of self-defense if they found, beyond a reasonable doubt, that the appellant fired the fatal shot and entertained a reasonable doubt as to whether in firing the shot he acted in self-defense. The jury was told in specific language that if Mrs. Spicer killed the deceased, or if they had a reasonable doubt upon the subject, the appellant should be acquitted.

It is claimed that the charge is defective in failing to be specific in instructing the jury that if Martin Uptmor struck the defendant in the face with his hand or that he cut Claude Spicer in the side with a knife or other instrument, or that he both struck the said Claude Spicer with his hand and cut him with a knife in the side, the action on the part of said Martin Uptmor caused the appellant Spicer to have a reasonable apprehension, etc.

In refusing to specify in his charge to the jury the various acts of the deceased which, in his testimony, it is claimed by the appellant that the deceased did, is not regarded as such fault in the charge as would warrant a reversal of the conviction. This is especially the case in the absence of a special charge. If such instruction had been given by the court, it might have been objectionable as restrictive of the right of self-defense to real danger, as confined to the acts mentioned, and to exclude that of the defense of apparent danger. It has often been said that it is not the province of the court to single out parts of the evidence and instruct the jury to give particular effect thereto except in cases in which the statute so requires. See Garza v. State, 102 Texas Crim. Rep., 241, 277 S. W., 382.

The court gave a comprehensive, and so far as we are able to judge, an unexceptionable charge on the law of self-defense. In paragraph 13 of the charge the court used language which is the substance of article 1257a, Vernon's Ann. P. C. (defining law of murder), enacted by the 40th Legislature, Regular Session, chap. 274, p. 412, sec. 2. The charge reads thus: "In this case, both the state and the defendant have been permitted to offer testimony as to all the relevant facts and circumstances surrounding the killing, if any, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the shooting, and you are instructed, that in the event you convict the defendant, all these matters and things may be considered by you in determining the punishment to be assessed."

The action of the court in incorporating in his charge the section of the statute mentioned is criticised as restricting the right of the appellant to have the relevant facts surrounding the killing and the facts and circumstances going to show the state of mind of the accused to the question of punishment.

Paragraph 13 is followed by paragraph 14 instructing the jury in appropriate language that unless the appellant killed the deceased with malice aforethought his punishment, if convicted, could not be greater than confinement in the penitentiary for five years.

Paragraph 15 is on the same subject as last mentioned, specifically applying to the question of the degree of malice the law of reasonable doubt. The language used in the charge is that embraced in the statute. In giving the instruction the court simply complied with the legislative demand. The criticism of it is not deemed tenable, especially when considered in connection with the other paragraphs of the charge.

That part of the charge defining malice is as follows: "Malice in its legal sense denotes a wrongful act done intentionally without just cause or excuse," is wrong. See Simmons v. State, 113 Texas Crim. Rep., 53, 19 S. W. (2d) 44.

The paragraph is followed by another paragraph giving an approved and comprehensive definition of malice aforethought. It has been frequently held that the charge mentioned was not erroneous in the sense that it would authorize a reversal when accompanied by a sufficient charge on malice aforethought. See Herrera v. State, 117 Texas Crim. Rep., 389, 36 S. W. (2d) 515; Pruitt v. State, 114 Texas Crim. Rep., 281, 25 S. W. (2d) 870; Zuniga v. State, 115 Texas Crim. Rep., 222, 28 S. W. (2d) 822.

On the claim that there was misconduct of the jury, three jurors were called. One of them testified that after concluding that the appellant was guilty of murder and their failure to agree on the penalty, they made an agreement to add the amount of penalty favored by each juror, divide the sum by twelve, and take the quotient as the verdict. According to the juror mentioned, two experiments of that kind were made. The first resulted in a quotient of 6 9/12, the other in 6 10/12. It was then agreed that they should take a vote to determine whether the penalty should be six years or seven years' confinment in the penitentiary, and the result was in favor of seven years. The other jurors testified to the same in substance except that each claimed that there was no agreement to abide the result, but from their testimony it was merely experimental. The statute, article 753, C. C. P., 1925, condemns a quotient verdict. Where the evidence upon the motion for new trial makes clear that there was an agreement in advance to abide the result, the verdict is bad, although there may have been a slight change by dropping a fraction. See Branch's Ann. Tex. P. C., sec. 656, sub. 2, p. 335. When such contention is made, however, and there is conflict of evidence touching the agreement, this court is bound by the solution of the controversy in the trial court. See Cockrell v. State, 85 Texas Crim. Rep., 326, 211 S. W., 939; Barnard v. State, 87 Texas Crim. Rep., 365, 221 S. W., 293; McCord v. State, 105 Texas Crim. Rep., 98, 286 S. W., 1094;

Harris v. State, 114 Texas Crim. Rep., 647, 26 S. W. (2d) 225; Bledsoe v. State, 111 Texas Crim. Rep., 159, 12 S. W. (2d) 227.

The position taken by the appellant on the former appeal is reasserted, namely, that there should have been submitted to the jury an issue of fact bearing upon the grade of the offense, based upon the contention that there was evidence that the death of the deceased resulted from an intervening cause not under the control of the appellant. The subject was discussed at some length on the previous appeal. See Spicer v. State, 115 Texas Crim. Rep., 110, 28 S. W. (2d) 810. The construction of the law there made is deemed sound. We will add, however, that we are impressed by our examination of the present record that there is no evidence supporting such issue. It appears that the wound was received by the deceased while at a dance, some distance in the country from the city of Waco. Immediately after receiving the wound, Uptmor was taken in an automobile a short distance to where a telephone could be reached and a doctor was called. In response to his inquiry the doctor was informed by the man who had conveyed Uptmor that the wound was in the "belly." The doctor advised that under such circumstances Uptmor should be taken at once to a hospital where an operation could be performed. The deceased was immediately taken to a hospital at Waco, some eighteen miles distant. The time consumed was eighteen minutes. About five minutes were consumed in reaching the place from which the telephone message was sent. The doctor who was first called and those at the hospital indicated that it was extremely unlikely that any other course would have preserved the life of the deceased. The wound was not in the "belly" but an artery in the leg had been severed or partly severed. The doctor who was first called testified that if he had known that the artery was severed, he might not have advised the taking of the deceased to Waco, but it was very doubtful whether he could have rendered any aid to the deceased. We are not in accord with the contention of the appellant that the opinion on the former appeal is in conflict with the case of Mason v. State, 94 Texas Crim. Rep., 532, 251 S. W., 1065. On the point under discussion, it may be added that the appellant, after the announcement on the former appeal, made no motion for a rehearing but accepted the result. It might be very plausibly stated that if there were fault in the previous decision, it might control in the present instance on the principle that it was the law of the case. See Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W., 316; Lee v. State, 67 Texas Crim. Rep., 137, 148 S. W., 706; Manley v. State, 69 Texas Crim. Rep., 502, 154 S. W., 1008; Corpus Juris, vol. 4, pp. 1092-1099, secs. 3075-3078.

On the facts before the court the conclusion on the subject reached on the former appeal is deemed correct, and the evidence requires a like announcment on this appeal.

The judgment is affirmed. *Affirmed.*

446

LATTIMORE, Judge.—The first ground of appellant's motion is that we misstated his objection to paragraph thirteen of the court's charge. Examination of the exception taken, as same appears in the record, shows that it is almost word for word identical with the statement of same in the opinion of the court. The complaint seems correctly disposed of.

Appellant insists that what we said in our opinion upon the former appeal of this case, together with what was said by us in Mason v. State, 94 Texas Crim. Rep., 532, 251 S. W., 1065, referred to in our original opinion herein with approval,—are all in conflict with Morgan v. State, 16 Texas App., 593. We do not think so. The Mason case announced that on its facts, the conclusion of guilt was sustained, and that a showing of death from loss of blood, which might have been prevented if medical aid had been promptly obtained, would not alter such conclusion. Nothing in the Morgan case, supra, did or could affect the soundness of the conclusion stated in the Mason case, supra. In the Morgan case Judge Willson says: "That is, this inquiry, if it had been properly treated, skillfully attended to, by those called to treat it, might have been cured and the life of the deceased saved. But if it had nevertheless produced the death, although by proper and timely aid and treatment death might have been prevented, still it would be homicide by the act of the defendant, unless it should appear that there had been gross neglect or manifestly improper treatment of the person injured by some other person than the defendant." There appears in the case before us no suggestion of gross neglect or manifestly improper treatment of deceased after being shot by appllant, such as appeared in the Morgan case, supra. The shooting in the instant case occurred in the nighttime at a country dance. No doctor was present. The laymen friends of deceased did their best. They called over the telephone a doctor who lived some miles away and gave to him what they thought a correct description of the wounds·of deceased. He told them to rush deceased to a hospital at Waco, which was done at once. This same doctor, a defense witness upon this trial, was shown the trousers worn by deceased when shot,—during his cross-examination,—and testified that it would be hard to tell whether he could have stopped the flow of blood from the wound in the place indicated by the clothing,—and further expressed the belief that if the femoral artery of the leg of deceased was clipped by the bullet, no doctor could have saved his life after he had been driven two miles.

Perceiving no error in the original opinion, the motion for rehearing will be overruled.

*Overruled.*

Morrow, P. J., absent.