James Darrell McCOMBS a/k/a James Darrell McComb, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–83–200–CR.

Court of Appeals of Texas, Austin.

Sept. 12, 1984.

Rehearing Denied Oct. 17, 1984.

J.W. Howeth, Austin, for appellant.

Ronald Earle, Dist. Atty., James M. Connolly, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, EARL W. SMITH and GAMMAGE, JJ.

PER CURIAM.

A jury found appellant guilty of the offense of possession of methamphetamine. Tex.Civ.Stat.Ann. art. 4476–15 § 4.04 (1976).[1] After finding that appellant had been previously convicted of a felony offense, the jury assessed punishment at imprisonment for life. Finding no reversible error, we affirm the judgment of conviction.

 The methamphetamine in question was seized during a search of appellant's apartment on the night of March 8, 1983. Appellant moved to suppress the fruits of this search on the ground that a statement in the affidavit supporting the search warrant is deliberately false or was made with reckless disregard for the truth, and that without this statement the affidavit is insufficient to establish probable cause for the search.[2] *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In pertinent part, the affidavit states:

[O]n or about the 8th day of March A.D., 1983, Affiant received information from a credible and reliable informant that James last name unknown, white male, approximately 42 years old, 6′ tall, and 165 lbs., is keeping a controlled substance, to wit: methamphetamine, in his possession inside his residence located at 1781 Spyglass Drive, building # 11, apartment # 185, Austin, Travis County, Texas. Informant has been present inside the aforedescribed residence within the past 72 hours and within this same 72 hour period has observed James last name unknown, white male approximately 42 years old, 6′ tall, and 165 lbs., in possession of a useable amount of methamphetamine, inside his residence located at 1781 Spyglass Drive building # 11, apartment # 185, Austin, Travis County, Texas. Although I do not desire to name my informant for reasons of informant's safety and well being, informant's reliability and credibility have been established by the fact that this informant has provided this affiant with information in the past which has proven to be true and correct and has led to the seizure of controlled substances, in particular methamphetamine.

Appellant's challenge to the affidavit concerns the statement that the informer had provided the affiant with information in the past which had proven to be true and correct and had led to the seizure of methamphetamine. Appellant contends that the evidence adduced at the *Franks* hearing establishes that the informer had not provided the affiant with information in the past, and that the statement that he had done so was, at the least, made with reckless disregard for the truth.

The informer was Jerry Cardwell. Cardwell had been arrested by the affiant, Austin police officer Michael Lummus, at approximately 7:30 p.m. on March 8, 1983. Cardwell had two grams of methamphetamine in his possession at the time of his arrest. In exchange for the dropping of charges, Cardwell agreed to cooperate with the police.

At the *Franks* hearing, Lummus testified that Cardwell told him that the methamphetamine had been "fronted" to him by appellant and that he needed to return to appellant's apartment with $110.00 payment. Cardwell also told Lummus that he

---

1. The indictment alleged the aggravated possession of more than 28 grams but less than 200 grams of methamphetamine pursuant to § 4.04(c) and (d)(1) of the Controlled Substances Act as amended by 1981 Tex.Gen.Laws, ch. 268. *See Crisp v. State*, 643 S.W.2d 487 (Tex.App.1982), aff'd, *Ex parte Crisp*, 661 S.W.2d 944 (Tex.Cr.App.1983).

2. No written motion to suppress on this ground appears in the transcript. However, the statement of facts contains a transcription of the court reporter's notes taken at a pretrial *Franks* hearing during which the issue raised by appellant was considered and ruled on by the trial court.

could obtain more methamphetamine from appellant. Lummus decided to test the accuracy of this information by means of a controlled buy.

At the police station, six $20.00 bills were photocopied and given to Cardwell, who had been thoroughly searched at the time of his arrest. Cardwell was then taken to appellant's apartment by Lummus. Cardwell entered the apartment, which was the first time he had been out of Lummus' sight since his arrest, and remained several minutes. Cardwell then returned to Lummus' vehicle with $10.00 and one gram of methamphetamine. At this time, he informed Lummus that he had seen additional methamphetamine in appellant's possession inside the apartment.

On the basis of this information, Lummus drafted the affidavit in issue. He then took the affidavit to Austin Municipal Judge Wilford Aguilar, who issued the search warrant.

Judge Aguilar also testified at the *Franks* hearing. He stated that he and Lummus discussed the events of that evening and that he initially believed the affidavit's description of the informer's reliability to be false. However, after giving the matter some thought, Judge Aguilar concluded that the affidavit was accurate:

> We talked about it a little bit and discussed it back and forth. I realized that I wasn't aware of any cases that say that the informant's information must be in a case other than the one that they're obtaining a search warrant for.

> . . . . .

> One of the issues I had to resolve was whether or not Lummus was, in fact, lying in this statement. I felt that the way he analyzed it as he told me, he was telling the truth and that he had given him information in the past. I couldn't think of any case law that indicated that that could not occur in the issuance of a

warrant where there is a confidential informant.

. . . . .

> The way I analyzed it is, you have an entry. He went in and he saw speed. He told the officers. The officers then said "You've never given us information before. We need to verify your information." They sent him back in and bought it. The information back here on the initial entry was proved to be true.

> The second entry was the entry he was referring to within the past 72 hours. With that he came in and got the search warrant based on the second entry using the truth of the first entry with the buying of the second entry to justify the search warrant. That's the analysis that I went through that night.

Clearly, the information gathered by Lummus on the evening of March 8 was sufficient to establish probable cause to search appellant's apartment, even when measured by the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[3] Cardwell's knowledge was based on his having been inside appellant's apartment that very night, where he had seen the methamphetamine. Cardwell's credibility was established by the controlled buy: he had said he could obtain methamphetamine at appellant's apartment and had done so. *See* 1 LaFave, Search and Seizure § 3.3, at 512 (1978).

■ The problem posed in this case is the result of Lummus' decision to cast his affidavit in the boilerplate language that evolved in the wake of *Aguilar* and *Spinelli*. As noted by the Supreme Court in *Gates, supra* n. 3, "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462

---

**3.** The search warrant in question was issued three months before the decision of the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates,* the court disapproved the mechanical

application of the *Aguilar-Spinelli* test, and reaffirmed "the totality of circumstances analysis that traditionally has guided probable cause determinations." *Id.,* 462 U.S. at ——, 103 S.Ct. at 2329, 76 L.Ed.2d, at 545.

U.S. at ——, 103 S.Ct. at 2328, 76 L.Ed.2d at 544. This observation applies to the instant case, where the facts constituting probable cause do not precisely fit the neat phraseology of the standard *Aguilar* affidavit.

But while the affidavit is awkwardly worded, we cannot say it is false. "In the past" is an unusual way of saying "earlier tonight," but it is nevertheless literally true that Lummus' informer, Cardwell, had previously given Lummus information (methamphetamine was present in and being distributed from appellant's apartment) that by means of the controlled buy had been proved to be true and correct. The methamphetamine obtained in this controlled buy had been seized by Lummus.

Moreover, the issue at a *Franks* hearing is not whether the affidavit contains false statements, but whether the affiant included these false statements in the affidavit knowingly and intentionally, or with reckless disregard for the truth. *Taylor v. State*, 604 S.W.2d 175 (Tex.Cr.App.1980). In reviewing the testimony of Lummus and Judge Aguilar, we are satisfied that Lummus did not deliberately lie in his characterization of his informer's reliability, nor did he recklessly disregard the truth. While it is apparent that Lummus was aware that this was not a "typical" case and that the language employed in the affidavit did not clearly describe the information he had gathered, it is also apparent that Lummus believed the affidavit was true. Lummus did not attempt to conceal the details of his investigation from Aguilar. On the contrary, these details were fully discussed and considered by Aguilar with the specific question of the accuracy of the affidavit in mind.

We hold that the trial court did not err in overruling appellant's challenge to the search warrant affidavit. Appellant's third ground of error is overruled.

■ In his fourth ground of error, appellant contends the trial court erred by admitting in evidence three items seized by the police during the search of his apartment. These items were appellant's driver's license, a sheet of paper bearing figures characterized by one officer as records of drug transactions, and an envelope addressed to appellant and his wife. Appellant contends these items were unlawfully seized because they were not specifically mentioned in the search warrant.

This contention was not preserved for review. No motion to suppress these items on this ground appears in the record, and the only objection voiced by appellant when the exhibits were offered in evidence was that the evidence was immaterial and the State had not laid a proper predicate. This ground of error is overruled.

■ Appellant's second ground of error concerns defense witness Alpheus Wayne Hodges. After brief questioning by Bob Looney, appellant's trial counsel, during which Hodges testified that he had met appellant while in jail and had met Cardwell on March 8, 1983, "to give him something," the assistant district attorney approached the bench. After an off-the-record discussion, the jury was excused. Outside the jury's presence, Hodges was questioned by the trial court:

> THE COURT: Mr. Hodges, now, I don't know what you're going to testify to, but you understand that you have the right to refuse to testify as to any testimony that might incriminate you.
>
> THE WITNESS: Yes, sir.
>
> THE COURT: You understand that?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Do you want your lawyer up here?
>
> THE WITNESS: It might be nice.
>
> THE COURT: I think it would be. Who did I appoint to represent you the last time?
>
> THE WITNESS: Mr. Looney.
>
> THE COURT: Well, we can't—
>
> MR. WILLMS: [assistant district attorney]: We've got a conflict of interest here.
>
> THE COURT: Well, I'll get a lawyer up here to advise you. We just want to be sure.
>
> THE WITNESS: Yes, sir, me too.

THE COURT: Yes, sir. Okay. We'll take a few minutes recess.

After the recess, Hodges informed the court that on the advice of counsel he did not wish to testify. The jury was then returned to the courtroom and was instructed to disregard Hodges' testimony.

Throughout this episode, appellant voiced no objections. He also made no effort to determine if Hodges' refusal to testify was absolute or if there were any particular questions which Hodges' would be willing to answer.

Prior to resting and outside the presence of the jury, defense counsel asked permission of the trial court to recall Hodges as a witness. Counsel stated that Hodges had assured him that he was willing to testify that he saw Cardwell on March 8, 1983, carrying the bag in which the methamphetamine was later found in appellant's apartment; that Cardwell was also carrying the pistol found by the police in this bag and told Hodges the weapon belonged to him; and that he saw Cardwell and Mary Beth McCombs, appellant's former wife, sitting together in an automobile on March 8, 1983. Counsel then requested that Hodges "be brought back down here again and asked if he would take the Fifth on those specified questions or any one of them." The trial court, after observing that Hodges had already been questioned concerning his willingness to testify, refused the motion.

In his second ground of error, appellant complains the trial court erred by refusing to allow him to question Hodges outside the presence of the jury to determine if the witness would invoke his Fifth Amendment privilege in response to questions concerning the matters referred to by defense counsel. However, appellant never expressly requested the trial court's permission to question Hodges outside the jury's presence. To the contrary, it appears that appellant asked the court's permission to recall Hodges before the jury based on trial counsel's assurances that the witness would not invoke the Fifth Amendment.

■ Even if the final exchange between counsel and the trial court is interpreted as a request to question Hodges outside the presence of the jury, this request came too late. Hodges had been present in the courtroom with independent counsel and outside the presence of the jury when he had first been called as a witness by appellant. At this time, an inquiry was made concerning Hodges' willingness to testify. At no time during this inquiry did appellant attempt to determine if Hodges would be willing to answer certain questions of an allegedly non-incriminating nature. Because it had been determined at this time, to appellant's apparent satisfaction, that Hodges was unwilling to testify, the trial court did not abuse its discretion by refusing to permit appellant to reopen the matter.

■ Finally, it should be noted that if appellant had attempted to adduce from Hodges the testimony described by defense counsel, the testimony would have constituted improper impeachment of appellant's own witness. Mary Beth McCombs was called as a defense witness. If trial counsel's description of Hodges' proposed testimony was accurate, this testimony would have contradicted statements made by Mary Beth McCombs during her direct examination. Appellant made no effort to lay the necessary predicate for such impeachment. Appellant's second ground of error is overruled.

In his first ground of error, appellant contends the State failed to prove that the previous felony conviction used for enhancement is final, thus rendering the proof insufficient to support the enhancement of his punishment pursuant to Tex. Pen.Code Ann. § 12.42(b) (1974). Appellant concludes that the maximum punishment that may lawfully be imposed in this cause is imprisonment for twenty years. Tex.Pen.Code Ann. § 12.33 (1974).

At the punishment stage of appellant's trial, the State introduced in evidence a penitentiary packet containing the judgment and sentence in Harris County cause number 164675, the 1972 robbery by as-

sault conviction alleged for enhancement. The sentence in cause number 164675 bears a typewritten notation that appellant appealed this conviction. The sentence also contains the following typewritten notation:

On this the 8th day of November A.D., 1976, the mandate of affirmance was received from the Clerk of the Court of Criminal Appeals of the State of Texas, Austin, Texas, Alias Capias issued for the Defendant.

Citing *Newsom v. State,* 136 Tex.Cr.R. 114, 123 S.W.2d 887 (1938), appellant argues that the recitation in the sentence that he appealed renders the sentence insufficient to establish a final conviction. Appellant further contends that the notation that cause number 164675 was affirmed is hearsay and of no evidentiary value. We disagree.

■■■ The recitals contained in a judgment and sentence are accorded a presumption of regularity. *Chancy v. State,* 614 S.W.2d 446 (Tex.Cr.App.1981). Where the judgment and sentence from a previous conviction alleged for enhancement are final on their face, the burden is on the accused to produce evidence that the conviction is not final. *Archer v. State,* 607 S.W.2d 539 (Tex.Cr.App.1980); *Williams v. State,* 596 S.W.2d 862 (Tex.Cr.App.1980). By introducing the judgment and sentence in Harris County cause number 164675, the State made a prima facie showing that the conviction is final. Appellant did not challenge the finality of this conviction at trial. Appellant's first ground of error is overruled.

Although not raised by appellant in his brief, the State has called the attention of this Court to an error in the punishment charge relating to the range of punishment. The trial court instructed the jury without objection that if it found the enhancement paragraph to be true, it was to assess punishment at imprisonment for life, or for any term not more than ninety-nine years or less than fifteen years. The correct range of punishment for a second degree felony enhanced by a single previ-

ous felony conviction is imprisonment for life, or for any term not more than ninety-nine years or less than five years. Tex. Pen.Code Ann. §§ 12.32 (Supp.1984) and 12.42(b) (1974). The question presented is whether the trial court's erroneous charge on the range of punishment constitutes reversible error.

This is not a case in which the punishment assessed is outside the correct range, *see Hernandez v. State,* 669 S.W.2d 734 (Tex.Cr.App.1984), or otherwise unauthorized by law. *See Bogany v. State,* 661 S.W.2d 957 (Tex.Cr.App.1983). The punishment assessed, imprisonment for life, is within the range authorized for a second degree felony enhanced by a previous felony conviction. Our sole concern is the error in the charge with respect to the minimum punishment.

To repeat, appellant did not object to the punishment charge at trial and does not raise this matter on appeal. The question thus arises whether the issue is properly before this Court. In *Daniels v. State,* 527 S.W.2d 549 (Tex.Cr.App.1975), the court observed:

Can the error of misdirecting the jury on the range of punishment be raised at any time? There are two lines of authorities. One line holds it may be raised at any time. [Citations omitted.] Another line holds that it may not successfully be raised for the first time on appeal and should be raised by objection before the erroneous charge is submitted to the jury. [Citations omitted.]

527 S.W.2d at 550. In *Daniels,* the court concluded that the defendant waived her complaint concerning the punishment charge by failing to object at trial.

■■■ But even if it is assumed that the error in the punishment charge was not waived by appellant's failure to object and is properly before us, we find no reversible error. An error in the charge shall not require the reversal of the judgment of conviction unless the error was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant did not have a fair and impartial

trial. Tex.Code Cr.P.Ann. art. 36.19 (1981). A long line of cases dating from the adoption of the predecessor to art. 36.19 establishes that the submission of an incorrect charge on the range of punishment does not require reversal of the judgment unless harm or prejudice to the defendant is shown. *See Daniels v. State, supra,* and cases cited therein. *See also Steele v. State,* 46 Tex.Cr.R. 337, 81 S.W. 962 (1904); *Graham v. State,* 73 Tex.Cr.R. 28, 163 S.W. 726 (1914); *McCoy v. State,* 122 Tex. Cr.R. 298, 54 S.W.2d 530 (1932); *Sellman v. State,* 138 Tex.Cr.R. 335, 136 S.W.2d 214 (1940); *Head v. State,* 160 Tex.Cr.R. 42, 267 S.W.2d 419 (1954); *Ross v. State,* 486 S.W.2d 339 (Tex.Cr.App.1972); *Sanchez v. State,* 666 S.W.2d 659 (Tex.Ct.App.1984, no pet.)

In the instant case, the trial court correctly instructed the jury as to the maximum punishment authorized by law, but erroneously charged that the minimum punishment was imprisonment for fifteen years rather than five years. The jury assessed the maximum punishment of imprisonment for life. Was appellant prejudiced by the error in the charge?

In *Pruitt v. State,* 114 Tex.Cr.R. 281, 25 S.W.2d 870 (1930), the jury was erroneously instructed that the range of punishment for murder with malice was death, or imprisonment for life or for any term of years not less than five. In fact, the law then applicable, former Pen.Code arts. 1256, 1257 and 1257b (1925), specified that the punishment was to be death, or imprisonment for life or for any term of years not less than two. The jury assessed the death penalty. In discussing this error in the charge, the court stated:

> There does not seem the slightest probability that a misstatement of the penalty in the respect mentioned could have in any way contributed to the size of the verdict. Article 666, C.C.P., inhibits, in substance, a reversal for error in the charge unless calculated to injure the accused, or unless he has not had a fair and impartial trial.... If there could be said to exist a probability that this jury would have returned a verdict of less than five years if authorized by the court, a different question would be before us. We may here say that the trial court did expressly authorize a penalty of two to five years if the jury believed the killing was without malice aforethought. This was rejected by the jury, and it seems wholly illogical to conclude that their verdict would have been different if they had been authorized to assess a penalty of less than five years provided the killing was upon malice aforethought.

25 S.W.2d at 873, 874. The judgment was affirmed.

The question presented in *Pruitt* was not, as implied by the court at one point, whether the jury would have assessed punishment at imprisonment for less than five years had a proper charge been given, but whether the jury would have assessed punishment at something other than death. However, we agree with the ultimate conclusion of the court that "it seems wholly illogical to conclude that [the jury's] verdict would have been different" had the charge correctly stated that the minimum punishment was two years in prison rather than five years.

The evidence before the jury in the instant cause reflects that appellant has been previously convicted and sent to prison in six felony forgery cases. Appellant has also been twice convicted and imprisoned for robbery by assault, and in one of these cases was assessed a life sentence. Appellant was on parole from this conviction when, less than one year following his release from prison, he was arrested in the instant cause. Finally, there was testimony before the jury that appellant had been engaged in the sale of methamphetamine ever since his release from prison.

The jury had before it a range of punishment of imprisonment for fifteen to ninety-nine years, or life. The jury chose life. In light of appellant's previous criminal record and the other evidence, it is wholly illogical to conclude that the jury would have assessed a different punishment had it been

instructed that the minimum punishment was imprisonment for five years, rather than fifteen years. We find that the error in the charge as to the range of punishment, if properly before this Court for review, was harmless.

We have also examined the connection raised by appellant in his *pro se* brief and find it to be without merit.

The judgment of conviction is affirmed.