CORNELIUS BLOCKER, alias CORNELIUS LEVIS, v. THE STATE.

No. 541. Decided March 1, 1911.

**1.—Murder—Charge of Court—Murder in Second Degree.**

Where, upon trial of murder, the court's charge on murder in the second degree was so framed that self-defense and manslaughter were merged into it and made to constitute murder in the second degree, the same was reversible error.

**2.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, the court's charge on manslaughter singled out certain facts from the evidence and left out others, instead of grouping them all in his charge, the same was reversible error.

**3.—Same—Evidence—Reputation of Deceased.**

Where, upon trial of murder, the State was permitted to introduce testimony of the good reputation of deceased as a peaceable man, the issue of self-defense not being in the case and the evidence excluded an attack by deceased, the same was reversible error.

**4.—Same—Continuance—Practice on Appeal.**

Where the case was reversed on other grounds, the refusal of a continuance need not be considered.

**5.—Same—Evidence—Confessions must be Voluntary.**

See opinion that confessions must be voluntarily made before they can

be introduced in evidence; or if this becomes an issue the matter should be submitted to the jury under appropriate instructions.

Appeal from the District Court of Navarro.    Tried below before the Hon. H. B. Daviss.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Callicutt & Call*, for appellant.—On the question of the court's charge on murder in the second degree: Connell v. State, 46 Texas Crim. Rep., 259; 81 S. W. Rep., 46; Abbatta v. State, 51 Texas Crim. Rep., 510; 102 S. W. Rep., 1125; Wheeler v. State, 56 Texas Crim. Rep., 547; 121 S. W. Rep., 166; McDowell v. State, 55 Texas Crim. Rep., 596; 117 S. W. Rep., 831; Puryear v. State, 567 Texas Crim. Rep., 231; 118 S. W. Rep., 1042; Davis v. State, 57 Texas Crim. Rep., 545; 124 S. W. Rep., 104; Smith v. State, 57 Texas Crim. Rep., 585; 124 S. W. Rep., 679.

On the question of the court's charge of manslaughter: Cochran v. State, 28 Texas Crim. App., 422; Hawthorne v. State, id., 212; Orman v. State, 24 Texas Crim. App., 495; Childers v. State, 33 Texas Crim. Rep., 509; Williams v. State, 15 Texas Crim. App., 617; Bracken v. State, 29 Texas Crim. App., 362; Wadlington v. State, 19 Texas Crim. App., 266; White's Penal Code, p. 439, sec. 1220, and cases there cited.

On the question of admitting evidence as to reputation of deceased as a peaceable man: Graves v. State, 14 Texas Crim. App., 113; Gregory v. State, 50 Texas Crim. Rep., 73; Wakefield v. State, id., 124; Keith v. State, id., 63.

*C. E. Lane*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is an appeal from a life sentence for murder in the first degree.

1. Applying the law to murder in the second degree, the court charged the jury as follows: "If you believe from the evidence, beyond reasonable doubt, that the defendant, Cornelius Blocker, alias Cornelius Levis, in Navarro County, Texas, on the 2d day of July, 1909, as alleged, with a gun, the same being a deadly weapon, did shoot and thereby kill Steve Levis, as charged in the indictment, you will find him guilty of murder in the second degree, and you will assess his punishment in the State penitentiary for any period that you may determine, and state in your verdict, provided it be not less than five years." This charge is clearly erroneous. See Clark v. State, 51 Texas Crim. Rep., 519; Smith v. State, 57 Tex. Crim. Rep., 585. There are numerous other cases supporting the same proposition. Under this charge, self defense and manslaughter are merged into and made to constitute murder in the second degree.

2. The charge on manslaughter is attacked. The 17th paragraph of the court's charge is in the following language: "The following is deemed adequate cause: An assault and battery by the deceased, causing pain or bloodshed." In section 21 of the charge, the jury are instructed that if deceased made an unlawful assault with a rock or brick, upon defendant, and by means of said assault there was produced in defendant's mind such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection, and "you further find that this condition of mind continued to and did in fact exist, at the very time when defendant did the shooting, and that it did render his mind incapable of cool reflection at that time, and that while defendant was laboring under such mental condition and excitement, he, in a sudden transport of passion, shot and killed Steve Levis, he would be guilty of manslaughter." We are of the opinion the criticism of these charges is correct. In regard to the first—that is, that assault and battery causing pain or bloodshed—there is no evidence in this record to authorize the giving of it. No witness testified that deceased struck appellant with anything or caused him pain or bloodshed. In regard to the 21st section of the charge mentioned, it will be noticed that the jury were instructed that if deceased made an assault with a rock or brick on defendant, and his mind became enraged and had not cooled, he should be convicted of manslaughter. The State did, as a matter of fact, prove that deceased went into the room where appellant and another negro boy were playing cards, and was very abusive; that after abusing the boy, he picked up a rock, or brickbat, and threatened to kill with it, which so frightened appellant that he jumped behind the door. During the remarks of the deceased, he called appellant a dam bastardly son-of-a-bitch, and applied epithets of even a more degrading and obscene nature, which we deem unnecessary to repeat. Section 21, of the charge referred to, limits the matter occurring at the time, as the cause of appellant's excitement, anger or rage, to the fact that deceased had a rock or brickbat in his hand, and threatened to use it. This was but a partial submission of the real facts as the State proved them. It would hardly need reasons to show that this was an incorrect charge. Appellant, in the submission of the question of manslaughter, is entitled to have the case presented as made. Here the deceased not only picked up the rock or brickbat and threatened to kill appellant, but he used the vilest epithets reflecting upon him and his mother, even to the extent of being a bastard and having intercourse with his own mother. Some of the facts should not be singled out, leaving other facts, but all should be grouped when the charge is so given, that is, the facts bearing on the same question or issue.

3. The State was permitted, over the objection of appellant, to introduce evidence of the good reputation of the deceased as to his being a peaceable and law-abiding man. We are of opinion that this evidence was not admissible. The issue of self-defense was not in the

case. The killing did not occur immediately upon the picking up of the rock or brick, by the deceased. The deceased had left the room where the first trouble occurred, and had gone outside of the house. The evidence also shows that he was out of the room for a few moments—anywhere from two or three, up to perhaps as much as ten, minutes, and at the time of the shot, the State's evidence excludes the idea that the deceased was trying to kill appellant, or making any efforts in that direction. It is true that there was evidence elicited during the trial that the deceased had abused both appellant and appellant's mother, wife of deceased, and had been cruel and whipped appellant's mother. The deceased had married appellant's mother, and was, therefore, his stepfather. We are of the opinion that under the facts of the case, the appellant not having put in issue the reputation of the deceased further than the isolated cases of assault and abusive language and threats, as above stated, that this would not justify evidences of the good reputation of the deceased. See Wakefield v. State, 50 Texas Crim. Rep., 124, where the authorities are collated.

4. The refusal of a continuance will not be discussed inasmuch as the judgment will be reversed for other causes.

5. Serious contention is made that the written confession of appellant should not have been introduced. The bill of exceptions is meager, does not contain the written confession, but we find the written confession in the statement of facts. We do not express any opinion in regard to that matter here, but if, upon another trial, the question should be fairly presented, as to whether inducements were held out as a predicate for the confession, or if appellant was in any way led into making a confession so as to indicate that it may not have been voluntary, the confession ought to either be rejected, or, if not, it should turn upon the issue as to whether it was voluntarily made or not, then it would become a fact question to be submitted to the jury, under appropriate instructions.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*