HARRY LYLES v. THE STATE.

No. 6676.  Decided February 15, 1922.

1.—Theft—Confession—Rule Stated—Proof Aliunde.

It has often been held that where the offense is substantially proved *aliunde*, the confession of the accused is sufficient to identify him as the guilty agent.  Following Williard v. State, 27 Texas Crim. App., 391, and other cases.

**2.—Same—Confession—Charge of Court—Rule Stated—Question of Fact, When.**

It is the settled law that, if from the evidence it appears that the confession is not freely and voluntarily made, if proper request therefor be made, the court should submit the issue to the jury, though the issue may be raised by the testimony of defendant himself, etc. Following Cortez v. State, 43 Texas Crim. Rep., 383, and other cases, and under the facts in the instant case, this issue should have been submitted to the jury, and a failure to do so is reversible error.

**3.—Same—Accomplice—Charge of Court..**

There is nothing in the record on appeal indicating any error by the trial court in refusing to apply the law of accomplice testimony to a certain witness.

Appeal from the Criminal District Court of Harris; Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Stevens & Stevens,* for appellant.

*R. G. Storey,* Assistant Attorney General, and *E. T. Branch,* District Attorney, for the State.

LATTIMORE, Judge.—Appellant was convicted in the Criminal District Court of Harris county of the offense of theft, and his punishment fixed at two years confinement in the penitentiary.

Appellant was charged in the instant case with theft of certain property belonging to one Wehrung. It was shown that a storehouse managed by Mr. Wehrung was burglarized and certain automobile accessories stolen therefrom. None of the stolen property was traced to the possession of appellant, nor does any one testify to any fact showing him guilty save that his own written confession made in conformity with the requisites of Article 810, Vernon's C. C. P., was introduced against him. It has often been held that where the offense is substantially proved aliunde, the confession of the accused is sufficient to identify him as the guilty agent. Williard v. State, 27 Texas Crim. App. 391; Sullivan v. State, 40 Texas Crim. Rep., 639; Gallegos v. State, 49 Texas Crim. Rep. 116.

Upon the trial appellant submitted to the court two special charges asking that the issues as to the voluntary character of his confession, be submitted to the jury. Both were refused. This is assigned as error. The issue was not presented in the main charge. Many cases have been before this court presenting phases of the question now raised, in which the courts have expressed themselves upon the facts of each particular case. It is settled law that if from the evidence it appears that the confession was not freely and voluntarily made,

if proper request therefor be made, the court should submit the issue to the jury. The issue may be raised by testimony of the defendant himself. Morris v. State, 39 Texas Crim. Rep. 376. The issue may be raised by the circumstances appearing from the statement of facts to surround or precede the making of such statement. Cortez v. State, 43 Texas Crim. Rep. 383. The fact that there is a conflict of evidence upon the question of the voluntary character of such confession, would not justify the trial court in concluding from the preponderance of the evidence that the confession was freely made, and in such case the issue should be submitted. Blocker v. State, 61 Texas Crim. Rep. 413.

In the instant case appellant was arrested apparently by officer Lowery. Officer Slack was at the scene at or about the time of such arrest. On his trial appellant testified that each of said officers cursed him and threatened him, one threatening to beat him up over the head, and the other threatening him with a gun. Appellant testified that each of said men forbade him denying what they said. He also testified that he was then carried to the city hall and there interviewed Mr. Kessler, the chief of detectives. He testified regarding said interviw as follows:

"I went to the police station and talked to Mr. Kessler, I told Mr. Kessler that I didn't know anything about it. I don't know if I told him the same thing that is in that statement and Mr. Kessler said take him to the district attorney's office. I don't know if I did or not, I told him I knew nothing of it, and he said something about Jack Cooper and said if I would pleád guilty he would get me out like he did Jack Cooper. He told me the same night that I was arrested. I did not know Jack Cooper. He never told me Jack had a suspended sentence. He never said anything Jack got. He said he would help me out like he did Jack."

In another part of appellant's testimony, referring to the interview with Mr. Kessler, he testified:

"Mr. Kessler came back, I kept denying it, I said that I didn't know anything about it. They carried me to jail and brought me from the jail to the district attorney's office, and I was going to sign a statement or release. I don't know what the release was, they had it fixed up some way, I don't know what. I expected to be turned loose, Mr. Lowery told me the evidence wasn't strong enough for them to hold me and for me to come to the district attorney's office and sign a release and he never hand-cuffed me coming down but he did going back."

In another part of appellant's testimony, referring to what took place between him and Mr. Lowery, apparently as they were going from the jail to the district attorney's office where the alleged confession was made, appellant testified as follows:

"He told me that he never had any evidence and could not hold me; he asked me to make the statement so the others could be arrested.

He was going to force me to make a statement so the others could be arrested when he had no evidence against me. I saw Mr. Evans and Kavanaugh and Mr. Leach in the office, I never told them of it, because what good would it do.''

In another portion of appellant's testimony, referring to the alleged confession, he said:

''They did not put me through the third degree about this here statement, but they threatened me about it. I have already told about Mr. Lowery, no one else threatened me except him.''

When appellant was put on the witness stand and shown said alleged confession, he stated:

''I signed that statement, but it was compulsory. Deputy Sheriff Lowery threatened me on Clark street road while I was hand-cuffed, he cursed me and said he would beat me in the head if I did deny anything he said. He did not say anything that I was to say at that place, he said that at the jail. He waited until he got me to jail and carried me to Mr. Kessler's office.''

It may be said that because the State introduced a large number of witnesses all of whom deny and contradict appellant's testimony on most, of not all, of the matters involved in the quotations from his testimony above set out, that, therefore, the refusal to submit the issue of the voluntary character of the alleged confession, could have in no event injured appellant. When the issue of the voluntary character of the confession is raised, as in this case, both by testimony as to threats and coercion on the part of one officer, and promises and inducements testified to as having been made by another officer, we do not believe the lower court justified in declining to submit such issue to the jury. Whether the jury would have believed appellant is a matter for them and not for us. The confession was the most material evidence against the accused. Its admissibility was dependent wholly upon its voluntary character. The issue was a vital one. The question was one of fact. The appellant was entitled to have it settled by a decision of the jury.

We find nothing in the record indicating any error on the part of the trial court in refusing to apply the law of accomplice testimony to the witness Evans.

For the error of the court in refusing to submit the issue of the voluntary character of said confession to the jury, the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*