HUGH GRAHAM v. THE STATE.

No. 15303.   Delivered May 18, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 401.

The opinion states the case.

*T. R. Mears,* of Gatesville, for appellant.

*Tom L. Robinson,* District Attorney, and *R. B. Cross,* both of Gatesville, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for twenty-five years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed W. G. Collier by shooting him with a gun.

Appellant and deceased lived on adjoining farms. Some time prior to the homicide, appellant and one of his tenants had a dispute over the matter of moving certain property from appellant's farm. A complaint of some nature was filed against appellant, and a warrant for service on appellant had been placed in the hands of deceased, who was a constable. Going to appellant's home, deceased required appellant to permit appel-

lant's tenant to remove some chickens from the place. According to the testimony of witnesses for the state, appellant stated to deceased, in substance, that there would be "another day," and that if deceased had any friends or kinfolks to take care of his family, he had better get them. Appellant's version of this transaction was to the effect that he made no threat of any nature against deceased at the time.

It appears that there was a gate opening from the field of deceased into the premises of appellant. According to appellant's testimony, deceased had wired this gate up, and he (appellant) had reopened it in order to have access to the public road. According to appellant's version, the difficulty resulting in the death of deceased arose from a quarrel over this gate. Appellant testified that deceased came to his house and called him to the gate; that deceased cursed him, entered upon his premises, and threw him to the ground; that he got on top of deceased and held him down; that, when he let deceased up, deceased grabbed at his (appellant's) pistol, which fell to the ground; that deceased then secured a rock and threw it at him; that, believing his life was in danger, he shot deceased and then struck him over the head with a pistol, holding the handle of the pistol in his hand and striking him with the barrel; that deceased walked away from the place. Appellant's wife corroborated appellant's version of the transaction.

The body of deceased was found about 141 yards down the road from where appellant testified the fight occurred. Deceased was lying on the ground, with his jumper folded underneath his head. There was a bullet wound directly over and in the direction of the heart. This bullet was taken out of the back and showed by the place of exit to have been a wound directly through the heart. The blood which had trickled from the wound flowed out of the wound across deceased's breast, dripping to the ground on both sides, but none of the blood had flowed downward toward his feet.

We think the evidence sufficient to support the conviction.

It is appellant's contention that the proof fails to support the averment in the indictment that he killed deceased by shooting him with a gun. He refers to the fact that the doctor said that the wound on the head might have killed deceased. The evidence showed the bullet entered the body at a point which would have carried it directly through the heart, and that it came out directly opposite the place of entry. This shows almost conclusively that deceased was shot through the heart. It was the opinion of the physician that, although the wound on the head might have caused death, death therefrom would not have resulted so quickly as from the shot in the breast. The opinion is expressed that the proof supports the allegation relative to the means used.

The court instructed the jury in the charge as follows: "If you should find from the evidence, or have a reasonable doubt thereof, that

the deceased met his death from wounds other than gunshot wounds, it will be your duty to acquit the defendant, notwithstanding that you may believe from the evidence that such wounds were inflicted by the defendant, and if you so find I instruct you to acquit the defendant."

Also the jury were instructed as follows: "You are instructed as a part of the law of this case that the state has introduced evidence in this case that the deceased received wounds on the head and the state is bound under the law by reason of such testimony, and if you should believe, or have a reasonable doubt, as to whether deceased died from the results of said wound on the head you should give the defendant the benefit of the doubt and say by your verdict not guilty."

We think this charge adequately presented the issue as to the cause of deceased's death. Miller v. State, 112 Texas Crim. Rep., 125, 13 S. W. (2d) 865; Betts v. State, 57 Texas Crim. Rep., 389, 124 S. W., 424.

In bill of exception No. 3 appellant complains of the action of the court in permitting the state to prove that deceased was a constable. Bills 4, 5, 6 and 10 relate to the action of the court in permitting the state to prove that when deceased went to appellant's home on December 25, 1930, he placed appellant under arrest. It was appellant's contention that proof that deceased was a constable was equivalent to showing that he was a man of good character, and that proof that deceased arrested appellant was equivalent to showing that appellant bore a bad reputation for being peaceable and law-abiding, he not having put his general reputation in the respect mentioned in issue. It is observed that it was the theory of the state that appellant became enranged at deceased at the time deceased, as constable, served a warrant of arrest on him, and advised deceased, in effect, that he had better make arrangements with his kinfolks and his friends to take care of his family, as there would be "another day." This theory was given support in the testimony of the state's witnesses. The statement attributed to appellant by these witnesses was in the nature of a threat. It became necessary for the state to show that deceased was a constable, and that he had a warrant of arrest for appellant, in order to prove the threat involved in appellant's statement to deceased. This testimony fairly tended to raise an inference in favor of the existence of a motive on the part of appellant to kill deceased. Branch's Annotated Penal Code, sec. 1879; Barkman v. State, 41 Texas Crim. Rep., 105, 52 S. W., 69. Hence the court was not in error in receiving it.

Appellant and his wife testified that immediately preceding the killing, deceased, in referring to the gate appellant had opened, said to appellant: "You d— s— of a b— I will fix you so that you wont open it any more." In his charge to the jury the court, in paragraph 13, submitted an instruction covering the law of self-defense. In paragraph 14 the court charged the jury on threats made by deceased to appellant at the

time of the homicide. There was no evidence of antecedent threats on the part of deceased. The charge given presented the issue more favorably to appellant than he was entitled to. We quote from McDougal v. State, 79 Texas Crim. Rep., 254, 185 S. W., 15, 20, as follows:

"There is no testimony that deceased, prior to this difficulty, had ever made any threats, nor did appellant claim that he had been informed that deceased had threatened his life. The only threats there is any evidence of are the threats appellant says deceased made in the wordy altercation immediately preceding the fatal shooting. Under such circumstances no charge on threats was called for or required. It has always been the rule in this court that where there is no evidence of antecedent threats, it is not necessary to charge on threats made at the time of and during the fatal difficulty. Armstrong v. State, 47 Texas Crim. Rep., 510, 84 S. W., 827; Dobbs v. State, 54 Texas Crim. Rep., 552, 113 S. W., 923; Davis v. State, 52 Texas Crim. Rep., 149, 106 S. W., 144. But a charge on threats was given presenting the issues more favorable to appellant than he was entitled to. And inasmuch as there is no evidence of communicated threats, and the only evidence of threats is the threats testified to by appellant as being made by deceased during the difficulty, it was not erroneous for the court to instruct the jury, if such threats were made, etc. If there was evidence of communicated threats, then such a charge would be erroneous, but where the only evidence of threats is in regard to threats testified to by appellant as being made direct to him, such a charge presents no error."

The court instructed the jury, in substance, that if they believed from the evidence beyond a reasonable doubt that appellant was guilty of murder, then that they might consider the condition of appellant's mind at the time of the killing, if any, and determine the punishment, if any, to be assessed, and that, as going to show the condition of mind, they might take into consideration all the relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between appellant and deceased, together with all relevant facts and circumstances in evidence. Following this charge, the jury were instructed that, unless from all the facts and circumstances in evidence they believed beyond a reasonable doubt that appellant was prompted and acted with malice aforethought, the punishment could not be assessed at a period greater than five years confinement in the penitentiary. Appellant objected to the first part of the charge mentioned on the ground that it was on the weight of the evidence. We are unable to agree with this contention. Article 1257a, Vernon's Annotated Penal Code, reads: "In all prosecutions for felonious homicides the State or defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circum-

stances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed."

A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Deceased was shot in the left breast. A doctor who examined the body, when asked as to the direction of the wound with reference to the heart, said "Right directly through it, practically." The skull of deceased was crushed by a blow. The same doctor said that in his opinion each wound would have been fatal. Appellant testified that he shot and then struck deceased. Several cartridges in his pistol were snapped; only one fired. Appellant testified "They snapped after the gun was fired. Yes, and it was before I struck him with the gun." The doctor who examined the body said he believed the gun shot killed deceased. He testified "Yes, my best judgment is the wound in the head would have taken longer to have produced death." A doctor called by the defense, who did not see the body, but answered hypothetical questions, testified that a doctor who viewed both wounds on the body could more definitely determine which caused death. We see no need for further discussion as to which wound caused deceased's death. The matter is discussed at length in our original opinion. The issue was submitted to the jury by the trial court in a manner most favorable to the accused.

Appellant himself testified to the acts of deceased as "constable." We think his complaint in several bills of exception of testimony to the effect that deceased was a constable properly disposed of in our original opinion, but in addition call attention to the fact that appellant himself, having testified that deceased was a constable, would render unavailing his complaint at the same testimony from others.

The state proved, as showing motive, that the deceased had arrested appellant. Testimony to this effect was complained of as presenting testimony that reflected upon the character of appellant. We think the complaint without foundation. The character of offense for which appellant was arrested does not seem to have been put before the jury, but, if material to the issue of motive, such proof would have been competent.

Finding no error in the record, the motion for rehearing is overruled.

*Overruled.*