SAM SMITH V. THE STATE.

No. 15587.   Delivered January 25, 1933.
Rehearing Denied March 1, 1933.
Reported in 57 S. W. (2d) 163.

The opinion states the case.

*Grady D. Hudson* and *Aaron Sturgeon,* both of Paris, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of ninety-nine years.

The conviction is for the murder of Razz Bray, a man about forty-four years of age, who was partly paralyzed, and lived alone in a two-room house.

On Sunday night, September 20, 1931, Bray was visited by his sister, who left him alive and well at 8:30 o'clock in the evening. At some time during the night and prior to 6:30 o'clock the following morning, the house occupied by Bray was

destroyed by fire, and the charred body of Bray was found near the fireplace. Gone from the place was the watch of Bray, also his gun; both of which articles were shown to have been in his possession at the time his sister parted from him. A witness testified that about one or two o'clock in the night of September 20th, the appellant appeared at the residence of a citizen who lived about a mile and a half from the dwelling-place of the deceased and asked for and obtained the privilege of spending the remainder of the night upon the gallery; that on the following morning he was seen by the witness in the yard in possession of a shotgun.

The alleged fact that the appellant was in the neighborhood of the tragedy shortly after it occurred and that he was at the time in possession of a shotgun is vouched for by several witnesses in behalf of the state. By similar testimony it was also shown that a short time after the homicide the appellant was in possession of and disposed of a watch and gun, both of which were identified as the property of the deceased.

The written confession of the appellant is formal as to warning and signing, and contains the following:

"On Sunday night, about the 20th day of September last year, I went to Raz Bray's house about 9 o'clock in the night. Raz Bray was at home by himself; he lived about one and a half miles southeast of Paris, Lamar county, Texas. When I got to his house he was sitting by the fire and when I went in the house I asked him if he had any money and he told me that he didn't have any money, and then I asked him if he had a pistol and he said that he didn't. Raz Bray then started to get up out of the chair he was sitting in and I got a piece of iron about two feet long and about an inch thick that was standing by the fireplace and knocked him in the head with it. I then got his watch that was lying on the table there in the house and got his shot-gun that was there in the house; then I took the top off from the lamp that was on the table and poured coal oil on the walls of the house and set it afire. I then left Raz Bray's house and went down the Paris & Mt. Pleasant railroad and went to Jim Morgan's house on Mr. Hanna's place, about two or three miles from town, and slept on the porch until day-light, the next morning. I talked to some one in Jim Morgan's house that night when I got there. I left Jim Morgan's house about daylight or before. On Tuesday after I soaked the watch I got out of Raz Bray's house to Joel Davis for $2.50. I sold the shot-gun I got out of the house to O. T. Miles and got three dollars for it. After I hit Raz Bray with

the iron, I never noticed him move any more and he never did speak after I hit him."

Appellant testified in his own behalf and claimed that the written confession introduced by the state was made by him under coercion; that the officers having him in charge took him from the jail handcuffed and hung him on the limb of a cedar tree by means of a chain; that he denied his guilt, but, because of the officers' persistence in threatening him, and their refusal to release him from the tree, he finally admitted his guilt. He was then taken by the officers to the county attorney's office, where the confession was made and signed by him; that he was under the dominion and fear of the officers who had him in charge at the time he signed the confession.

Clyde Shelton (a constable) testified that he and others took the appellant to the place where the deceased was killed, and, as they approached the place, the appellant protested against being taken there. He said that he would tell the truth, and he was then taken to the county attorney's office, where he made the confession without any coercion. Collins, a deputy sheriff, and Cunningham, the jailer, gave similar testimony. The officers denied the use of force or coercion, and also denied the use of chain and making of threats as claimed by the appellant.

By his own testimony the appellant presented the theory of alibi, and introduced some witnesses to support it. He testified that the watch identified as belonging to the deceased was gotten by him from Bryant Styles, a negro boy who lived in the town; that he pawned it to Joel Davis for $2.50; that he also got the shotgun from Styles and sold it to a man named Miles. Appellant admitted that on the night of the 23rd of September, he was sleeping in the barn of Coy Hill; that he was also on the premises of Robert Ford at the time he had the double-barreled shotgun which he had gotten from Styles. He claimed that he had been hunting with the gun, got tired, and stopped in the barn to sleep. At that time he did not have the watch in his possession, it having been pawned.

Styles testified that he did not have the gun or the watch, and that he did not sell them to the appellant.

The principal legal question presented in this review is the contention of the appellant that the corpus delicti is not established. The count in the indictment upon which the verdict rests is that charging that the appellant killed Razz Bray by striking him with a piece of iron.

The validity of the conviction is attacked upon the specific contention that there is not sufficient proof that the blow with

the piece of iron caused the death of the deceased. While in the appellant's confession it is stated that a bar of iron was the weapon used, the appellant truly says that his extrajudicial confession alone is not sufficient. The rule is thus stated in Kugadt's case, 38 Texas Crim. Rep., 681 (see page 694).

"The general doctrine is that extrajudicial confessions, standing alone, are not sufficient proof of the corpus delicti; and some of the cases hold that the corpus delicti must be proved independently of confessions. But we do not understand such to be the better doctrine. In other words, in the establishment of the corpus delicti, the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence. * * *

"When a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused. * * *

"We take it that there can be no question that the prosecution is permitted to prove by circumstantial evidence the corpus delicti, and in aid thereto use confession of the appellant."

On the subject of the jury's finding that the death of the deceased resulted from a blow with an iron bar, the following observations are made: At nightfall, the deceased, a man of mature years, was alive and well save that he had a crippled arm. He was alone in his house. At dawn on the following morning his charred remains were found on the hearth of his dwelling which had been destroyed by fire during the night. His relative testified and identified his body, basing her judgment, as understood, upon the shape of the arm of the deceased. No mention was made by her or the other witnesses of the condition of the body save that the charred remains were identified as above stated. From the confession of the appellant, it appears that he entered the house of the deceased at nighttime; that he saw the deceased sitting in a chair; that he seized an iron bar and struck the deceased a blow on the head which felled him to the floor. Aside from the confession, the evidence showed that after killing the deceased and taking his property, the appellant set his house on fire. From the facts adduced, it is not escapable that before the deceased was robbed and his house set on fire, he had been felled to the floor by a blow with an iron bar sufficient in its dimensions to apparently produce death. The facts revealed demonstrate that the blow with the iron bar was a contributing cause of the death of the deceased. Under the facts before the jury, it appeared that the deceased was first felled and robbed and then left in a

burning house set on fire by the accused. There is in the record evidence sufficient to show that the appellant's accounting for his possession of the property of the deceased was false. The identity of the accused as the actor in each of these assaults appeared both from his confession and the circumstance in evidence. We regard the contention that the proof of the corpus delicti was not sufficient as untenable. Appropriate instructions were given to the jury touching the two counts in the indictment and their finding was specific to the effect that the deceased was killed with an iron bar. The availability of circumstances to establish the corpus delicti is affirmed in many cases. See Tex. Jur., vol. 12, pp. 270, 271. See, also, Graham v. State, 51 S. W. (2d) 401; Wharton's Cr. Law (12th Ed.), vol. 1, secs. 352, 353, 357 and 359; also p. 671, sec. 435.

On the merits, this case differs from that of Hernandez v. State, 110 Texas Crim. Rep., 159, to which we have been referred. Hernandez was not shown to have been in the possession of any of the property of the deceased, and the admitted conduct of the officers who had him in charge presented a serious question touching the admissibility of the confession.

Bill No. 1: The indictment was not duplicitous. However, the first count alone was made the basis of their verdict by the jury, which would eliminate the question of duplicity. This also applies to Bills Nos. 4 and 5.

Bill of exception No. 2 brings forward the complaint of the appellant of the action of the court in refusing to continue the case. A continuance was sought to secure the testimony of W. P. Evans, Jack James and W. A. Crawford. The averments touching the testimony expected of the witnesses are set out in the application for a continuance as follows:

"That he expects to prove by W. P. Evans, witness, that he was at Deport, Texas, on the date of the alleged crime and was not present at the scene of the alleged crime as charged in the indictment.

"That he expects to prove by the witnesses Jack James and W. A. Crawford his physical condition before he was taken from the Lamar County jail and hung and a confession extorted from him and also prove his physical condition at the time he returned to the Lamar County jail."

The facts set up in the motion are not regarded as sufficiently specific to show the materiality of the testimony to which they referred. It appears from the motion and the bill complaining of the matter that the application for a continuance was neither signed nor sworn to by the appellant. In qualifying the bill, the court states his reasons for refusing

to grant the motion, among others, that the appellant failed to swear to the motion. The purported exception to the qualification of the bill is not verified by the approval and signature of the judge, and consequently is not effective. See Thomas v. State, 83 Texas Crim. Rep., 325; Exon v. State, 33 Texas Crim. Rep., 461. Under such circumstances, the qualification of the bill is available for consideration by this court. In article 545, C. C. P., 1925, it is said: "All applications for continuance on the part of the defendant must be sworn to by himself."

The effect of the failure to comply with the mandate of the statute is discussed in the case of Maples v. State, 60 Texas Crim. Rep., 169. It appears from the statement of facts that both the witnesses James and Evans appeared and testified on the trial. The witness Crawford was not under process, but his testimony would have been to the effect that while present in Lamar county jail he saw the appellant who was taken out of jail; that when he returned sometime later "he was walking weak and slow"; that on the following morning the witness was shown by the appellant a red mark on his neck and bruises on his arm. He complained to the witness about his wrist. The bill, especially in the light of the qualification, shows no error.

In Bill No. 6 the same matter of continuance was brought before the court as a part of the motion for new trial. There appears no change in the motion, but in connection with the bill is the affidavit of W. A. Crawford. The motion for a continuance is not in condition for consideration for the reason, as stated above, that it was not properly verified, and for the additional reason that at the time is was rendered it was subject to other objections, including the sufficiency of the averments as to the materaility of the evidence.

Touching bill of exception No. 3, which complains of the introduction of the appellant's written confession in evidence, it is to be observed that the appellant testified that his confession was the result of coercion. This was controverted by the witnesses introduced by the state. The matter was submitted to the jury in an instruction by the court, and the result of the trial reflects a decision of the issue of fact in favor of the state. Many precedents support the procedure and the view that under such circumstances the settlement in favor of the state must be upheld on appeal. See Branch's Ann. Tex. P. C., p. 46, sec. 75; McVeigh v. State, 43 Texas Crim. Rep., 17; Blocker v. State, 61 Texas Crim. Rep., 413; Goode v. State, 123 S. W., 604; Grace v. State, 234 S. W., 541; Lyles v. State, 237 S. W., 558; Patton v. State, 111 Texas Crim. Rep., 555.

The alleged newly discovered evidence was relied upon to controvert the state's testimony upon the issue of coercion in bringing about the confession, and to corroborate the appellant upon that subject. He testified, as hereinabove stated, that he was handcuffed and a trace chain run through and swung up to a limb of a tree. From his testimony we quote: "They had me down by the T. & P. railroad there, out at the old Razz Bray place. They had me hung on a cedar tree. Mr. Collins was there and Mr. Payne and Mr. Clyde Shelton. While I was there, there was a car come there and stopped and they shot twice over across the Mt. Pleasant railroad and they come driving down the road fast."

The substance of the alleged newly discovered evidence was set out in the affidavits of Homer Robbins, Bryand Denny, and Lawrence Eckels. The affidavits bore date the 18th day of May, 1932. The substance of all the affidavits is illustrated by that of Homer Robbins, which we reproduce as follows: "I, Homer Robbins and three other boys, Herman McCoin, Bryand Denny, Lawrence Eckels, went walking around down the M. P. tracks some two months ago, about nine o'clock and about the middle of the week. Two Sedans, one a Chevrolet and the other a Ford, came down the road. One was a little ways behind the other with the lights off. They stopped at the old place of Razz Brays. They got out and shined flashlights around the place and up in the trees. We heard two shots from a pistol, then is when we decided to leave. We came up the tracks towards town. We got a good ways up the track and seen one of the cars leave. They had been there about 30 or 40 minutes."

The appellant and the state's witnesses are in agreement in the claim that during the night upon which he made the confession, he and three officers were in the neighborhood described by the appellant in his testimony. There is no testimony from either source indicating that the firing of the shots mentioned by the appellant and by the boys bore any relation to the voluntary character of the confession. The identity of the time described by the boys in their affidavits and that of the date of the confession is not shown with any degree of certainty in the newly discovered evidence. The young men in making the affidavits simply said that it was "some two months ago." The date of the confession was March 23, 1932. We are constrained to regard the contention that prejudicial error appears from bill No. 9 cannot be sustained.

The opinion is expressed that there is revealed by the record no weakness in the evidence nor fault in the ruling of the trial

court that would demand or authorize a reversal of the judgment of conviction.

It appears that in entering the judgment there was error in failing to properly describe the offense of which the appellant was convicted by the jury, which was the offense of murder with malice. The judgment should be reformed to agree with the verdict and show that the appellant's conviction was for murder with malice aforethought, and penalty fixed at confinement in the penitentiary for ninety-nine years. It is therefore ordered that the judgment be reformed in the above particular, and, as so reformed, it be affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In count one of the indictment appellant was charged with a killing by striking with a piece of iron. This description of the weapon used was sufficient. The second count charged a killing by burning. The third count charged a killing by both burning and striking, but in the charge this count was eliminated by express direction from the court. The first and second counts were submitted to the jury, with instructions that in case a verdict of guilty was reached, the jury should state upon which count they based their verdict. This was proper practice. The jury specifically found appellant guilty under the first count, and the judgment and sentence followed the verdict.

We have carefully examined the numerous proposititons found in appellant's motion, covering nearly all the matters decided by us, and find nothing amiss save a slight error of inadvertence which has been corrected in the former opinion. Most of appellant's discussion apparently urges the inadmissibility of his confession, but same is really a complaint of the lack of evidence to establish the corpus delicti. Under all our authorities the state was entitled to introduce the confession upon the prima facie case of admissibility made by its witnesses who swore that the confession was freely and voluntarily made. Appellant having sworn to a different story, that said confession was untrue, and that same was extorted from him by threats and violence, the court below, again following our settled line of holdings, submitted to the jury the issue thus made, that is, whether the confession was or was not free and voluntary.

In said confession appellant admitted the killing of deceased by striking him with a piece of iron. There hence remained but the question of whether other testimony supported and

corroborated this extrajudicial confession. To our minds the sufficiency of such other testimony is clear. Appellant said in the confession that he killed deceased Sunday night, and then burned the house, after taking the watch and shot gun of deceased; that he then went to Jim Morgan's house, talked to Morgan, and slept on his porch until daylight; that a couple of days later he soaked said watch to Davis, and sold the gun to Miles. In corroboration and support of this it was shown that deceased who lived alone, was alive and well as usual at 8:30 o'clock Sunday night; that he had his watch at said time, and his shot gun was lying on his bed; that about midnight his house was observed in flames; that next morning the dead body of deceased was found in the ashes of his burned house; that search for the metal of his gun failed to find it. Jim Morgan and another swore that on Sunday night about one or two o'clock appellant, carrying a double-barreled shot gun, came to Morgan's home and slept on his porch till day. Others swore to seeing appellant that day near the home of deceased with a double-barreled shot gun. His possession and sale of the watch and gun of deceased after his death was proven.

It is well settled that circumstantial evidence may be resorted to to show that the death of deceased was the result of violence inflicted. Porch v. State, 50 Texas Crim. Rep., 335; Wilson v. State, 39 Texas Crim. Rep., 365. This case bristles with such circumstances. The confession may be looked to in aid of other proof of the corpus delicti. Lott v. State, 60 Texas Crim. Rep., 162; Kugadt v. State, 38 Texas Crim. Rep., 694. We are not able to agree with appellant in his renewed complaint of any procedure.

The motion for rehearing will be overruled.

*Overruled.*