**DAHLEM CONSTRUCTION COMPANY etc.,**
Appellants,

v.

**MID–CITY DEVELOPMENT ASSOCIATES**
etc., Appellees.

Court of Appeals of Kentucky.

Dec. 9, 1966.

James W. Hendricks, Marshall, Cochran, Heyburn & Wells, Louisville, for appellants.

Wilbur Fields, Louisville, for appellees Mid-City Development Associates and Elinore Sedley.

HILL, Judge.

This is an appeal from a judgment denying recovery to appellants in their suit for compensation for services rendered to appellees in connection with the development of a shopping center on Baxter Avenue in Louisville, Kentucky.

In March 1960, Dick Clark, a licensed real estate broker, contacted Joseph Dahlem, president of Dahlem Construction Company, and enlisted the efforts of Dahlem and his company to plan and develop a shopping center. Over a period of months, Dahlem consulted with Clark concerning details of construction plans and cost items and did considerable work in locating and contracting with tenants for the shopping center. (Our reference to Dahlem herein may relate either to Joseph Dahlem or Dahlem Construction Company or to both.)

Early in the plans for the shopping center, Mid-City Development Associates was incorporated to take title to the real estate on which the shopping center was to be constructed. (We refer to this company herein as Mid-City Associates.)

In the fall of 1961, for some reason, probably financial, the Mid-City Shopping Center, Incorporated, came into the picture. (We refer to this second corporation as Mid-City Center.)

Mid-City Center needed detailed plans and specifications in order to borrow money; so, Dahlem was requested to supply those plans and specifications. Dahlem estimated the cost of such plans from $25,000 to $30,000 and requested Mid-City Center to put up the latter amount. Mid-City Center refused and secured the plans elsewhere. Dahlem, failing to get the contract to construct the shopping center, filed this suit to recover for services rendered.

The original complaint was filed on behalf of Dahlem Construction Company, an incorporated construction company. After defendants pleaded the services claimed to have been rendered by plaintiff

involved services of a realtor, architect and engineer and that no such services could be lawfully performed without licenses issued by the Commonwealth and that Dahlem did not have such licenses, Joseph Dahlem, individually, filed an amended complaint seeking to be made a party plaintiff. He alleged he was a licensed engineer and entitled to recover individually for the services rendered. Joined as defendants were Mid-City Associates, Mid-City Center, and Elinore Sedley, surety on an indemnity agreement in connection with the transfer of the shopping center property from Mid-City Associates to Mid-City Center.

The circuit court dismissed the complaint as to Mid-City Center on the theory the allegations did not justify a recovery against it for failure to allege fraud in the transfer of the property from Mid-City Associates to Mid-City Center.

The best we can determine from appellants' brief (since most of it is devoted to anticipation of the defense) is that appellants contend they are entitled to recover under the legal theory of implied contract or on the basis of *quantum meruit*.

First, we examine the facts and circumstances with the hope of determining whether there was an implied contract to pay for services rendered or whether the services were performed under circumstances resulting in such benefits to defendants as would imply an obligation to pay therefor.

There was no written or oral agreement between Dahlem and defendants, although Dahlem testified on discovery that he had an oral agreement with "Tyrus Davis, who was President, President of Bankers Bond, representing Mrs. Sedley." Further along in his testimony Dahlem was asked and replied as follows:

"Q. Now, how were you to be compensated for the work that you thereafter did?

"A. We were to be given the contract for the construction on the entire project.

"Q. To whom was that contract awarded?

"A. The owner sold the project to McGaughey (organizer of Mid-City Center), who changed the name of the corporation.

"Q. Yes.

"A. And then Whittenberg was the contractor for the project for McGaughey."

*    *    *    *    *    *

"Q. You did this, however, with expectation of being awarded the contract?

"A. Yes."

*    *    *    *    *    *

"Q. * * * and I believe it is fair to state that you did the services in contemplation of getting the contract for the construction. Is that fair to say that?

"A. Correct.

"Q. Now why didn't you get it?

"A. They brought McGaughey, McGaughey, Jr., from Mt. Carmel, Illinois into the picture as prospective buyer and Mr. Clark called me and we met with Mr. McGaughey at our office at midnight and carried on till 6:00 o'clock the following morning."

*    *    *    *    *    *

"Q. Now to get back, why you failed with these dates in mind.

"A. On August 18th we gave Mr. McGaughey a proposal to build this center and one of the stipulations was this, they had to file a complete

set of, they had to file plans with the Republic Insurance Company of Texas, who were going to lend two and half, three million dollars, on the deal. * * * So I talked to Bailey Ryan about how much he would charge to make up the drawings. * * * How much would he charge me as a contractor to get up these drawings to be submitted to the Republic Insurance Company of Texas so that they would have these drawings to submit to their Board so that they could ratify this loan, and then he gave me a price of $25,000. I in turn told McGaughey we agreed to have—here (referring to records)—we'll prepare the architectural plans and engineering drawings showing each of the stores in this Mall as well as the basement, complete with cross sections, elevations and to such an extent that the insurance company making the permanent loan will be able to evaluate the construction and know what they are getting. We agreed to have these in the hands of the insurance company within four weeks from the date of contract. On this score we asked the owners to lodge *the sum of $30,000* to be held in escrow at the Citizens Fidelity Bank and Trust Company and to deliver to us this sum when we deliver these plans. * * * McGaughey said no, I won't put up a damn cent. So I said well, we can't, we have got too much invested in this thing and I said not only that, but I don't know you, I don't know your intentions, whether they are honorable." (Emphasis ours.)

\* \* \* \* \* \*

"Q. But you turned it down because you weren't going to put up this money in order to get the contract?

"A. That's right."

\* \* \* \* \* \*

"Q. But he was holding out to you that if you did do that that you could have the contract and not Whittenberg?

"A. Yes.

"Q. On the same terms that Whittenberg Construction Company did?

"A. Yes."

Later, in open court, Mr. Dahlem stated: "There was no oral contract, just the fact that they engaged our services and Mr. Clark met with us from time to time * * *."

There is no difficulty, therefore, in concluding there was no contract, either oral or written. But was there an implied contract or were beneficial services rendered defendants under conditions implying an obligation to pay?

The judgment appealed from found as a matter of fact (in approving and adopting the commissioner's report) that: "* * * it is felt that there can be only one conclusion, and that is that the plaintiff, Dahlem Construction Company, furnished all of the services mentioned, expended all the money for travel, entertainment, and other items mentioned throughout the depositions for one self-serving purpose, and that purpose was to get for himself the construction job of building the Mid-City Shopping Center, Incorporated, and obtaining for himself the fee of $180,000 * * * that the plaintiff had no expectation of making any charges for the same; that his one and only self-serving thought was the $180,000 fee; that he gambled, and for the first time in his long business experience, he lost."

We find no indication in the record that construction contracts on large projects,

such as this shopping center, are let under competitive bidding. Perhaps due to the magnitude of such projects plans are subject to many changes; therefore, a contract based upon a percentage of cost is more advantageous to all concerned. Apparently, such contracts are let to whomever the builder selects; and in the present situation, disagreement over the cost of the architect's plans resulted in appellants' failure to get the contract.

The finding of fact referred to above contains the answer to our question. It is concluded there was no implied contract; that appellant is not entitled to recover on the basis of *quantum meruit*. The findings were not clearly erroneous. CR 52.01. We have not reached this conclusion without genuine sympathy for appellant, as he devoted a great deal of time and some money to planning and promoting the project. Being the founder of the appellant company, he is a man of great experience in developments of the classification involved here. But had he desired assurance of compensation in the event he was not successful in obtaining the contract, he should have had an agreement in black and white so providing.

The commissioner's report, approved by the judgment, also concluded that a recovery could not be had in the present case by reason of the fact that all the services were authorized by licenses (realtor, architect, and engineer) issued by the state; and inasmuch as Dahlem had no such licenses, any contract with reference thereto was void. It is unnecessary for this court to uphold or repudiate this conclusion of law by the trial court in view of our disposition of the questions of fact hereinabove discussed. It should be said, however, that it is doubtful that the facts of this case bring the services rendered within the scope of the licensing statutes.

The judgment is affirmed.