**Jeff Earl CARVER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 47770.**

Court of Criminal Appeals of Texas.

May 1, 1974.

Rehearing Denied May 22, 1974.

---

350

Clifford W. Brown, Thomas L. Clinton, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., Dickey Grigg, Asst. Dist. Atty., Lubbock, and Jim

D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Appellant was tried for murder with malice aforethought with the jury finding him guilty of murder without malice and assessing his punishment at five (5) years' confinement in the Department of Corrections.

The sufficiency of the evidence is not challenged. The record does show that on September 9, 1971, the 15 year old appellant, a student at Dunbar High School in Lubbock, was confronted by the deceased, Willie Collier, another student, who demanded a cigarette, searched the appellant's pockets, and made implied threats. Later, in the gymnasium the deceased again approached the appellant, struck him with a box opener, causing appellant's arm to bleed, and made threats to kill him.

Appellant, then in company with Jerry Rogers and John Tue, went to his home during the lunch period where he obtained a pistol. After lunch, the appellant returned to the school and during the afternoon approached the deceased in the hallway and shot him with the pistol, causing his death.

At the outset appellant contends his constitutional right of confrontation under the Sixth Amendment of the United States Constitution and Article I, Section 10, Vernon's Ann.St., of the State Constitution was violated when the trial court permitted, over objection, the testimony of Tue and Rogers given at a prior waiver of jurisdiction hearing in juvenile court conducted under Article 2338–1, Secs. 6 and 13, Vernon's Ann.Civ.St.[1]

▌ If the witness has once testified in a case, on a preliminary hearing or on a former trial, and the accused was present and had the opportunity to cross-examine the witness, and such witness has since died, or resides out of the State, or has removed beyond the limits of the State, or cannot attend the trial by reason of age or bodily infirmity, or has been prevented from attending court through the act or agency of the other party, his testimony may be reproduced in a subsequent trial of the same case if the proper predicate be laid for its admission. See Article 39.01, Vernon's Ann.C.C.P.; 1 Branch's Ann.P. C., 2d ed., Sec. 98, p. 110. To be admissible it must be shown that the witness' testimony at the former trial or hearing was given under oath, that it was competent, that the accused was present and had adequate opportunity to cross-examine him through counsel, that the accused was the defendant at the former trial or hearing upon the same charge. See 24 Tex.Jur.2d, Sec. 698, p. 337; Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Such predicate must be clearly and satisfactorily established before such testimony can be reproduced. 1 Branch's Ann.P.C., 2d ed., Sec. 99, p. 112.

In Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court noted that this exception to the confrontation requirement "has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement."

▌ Where the State seeks to reproduce testimony of an absent witness given at a prior hearing, it has the burden of establishing an exception to the right of confrontation. See Whitehead v. State, 450 S.W.2d 72 (Tex.Cr.App.1969); Cumpston v. State, 155 Tex.Cr.R. 385, 235 S.W.2d 446 (Tex.Cr.App.1951).

Recognizing the traditional exception to the confrontation requirement where a witness is unavailable and has given testimony

---

1. This hearing is sometimes referred to as a discretionary transfer of jurisdiction hearing.

in a previous judicial proceeding against the same defendant which was subject to cross-examination, the Supreme Court in *Barber*, supra, nevertheless held that "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."

Appellant contends that the State failed to lay the proper predicate for the introduction of such evidence by failing to show that the witnesses Tue and Rogers were unavailable and that their return to the jurisdiction of the court was indefinite. The State did offer testimony that the witnesses were in the United States Marine Corps, Rogers being in North Carolina and Tue being aboard ship off the coast of Vietnam. Appellant urges that this did not reflect their return was indefinite. Relying upon Barber v. Page, 390 U.S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968), he further contends the State failed to make a good faith effort to secure attendance of the witnesses and did not fully comply with the Uniform Act to secure attendance of witnesses from without the State in criminal cases. See Article 24.28, Vernon's Ann.C. C.P. The district attorney did testify he had forwarded subpoenaes to the commanding officers of the witnesses and was informed the Marine Corps would not have the prospective witnesses honor subpoenaes until the State advanced funds for travel, and, apparently relying upon some Attorney General's opinions, related there was no method by which money could be so advanced by the State.

Further, appellant charges that the State failed to show the appellant was a defendant on the same charge at the prior juvenile hearing on waiver of jurisdiction, and that this was also an essential part of the necessary predicate. He further contends that the State failed to show that he had an adequate opportunity at the juvenile court hearing to cross-examine the witnesses relative to the murder charge, as the purpose of the hearing was the issue of jurisdiction.

■ We need not discuss in detail each of appellant's contentions that the proper predicate was not laid for the reproduction of the witnesses' testimony, for we conclude that the error, if any, was harmless error beyond a reasonable doubt under Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

This was not a circumstantial evidence case. A number of witnesses described the events just prior to and after the shooting. Several were eyewitnesses. Tue and Rogers were not the only incriminating witnesses for the prosecution. The fact that the appellant went home, got a pistol, ate lunch at a hamburger stand, returned to school and shot Collier as Collier was backing away from him was not in dispute since the appellant testified and corroborated in essence the missing witnesses' testimony.

The "untainted" evidence provided overwhelming support for the conviction so that we may declare beyond a reasonable doubt that the error, if any, was harmless. See Whitehead v. State, supra.

Next, appellant contends that the court's charge improperly limited the consideration "that the jury could give to the condition of the Defendant's mind at the time of the killing."

Appellant notes the testimony of a psychologist who testified that an examination seven months prior to the alleged offense showed him to be "a very scared and very frightened child" of 15 years who was emotionally immature and who, because of his size, was expected to act older and more mature.

Despite the timely presented objections to the middle paragraph below, the court charged the jury in part as follows at the guilt-innocence stage of the bifurcated trial:

"If you should find that the defendant was guilty of murder but you have a reasonable doubt as to whether the defendant, in committing the offense, if he

did, was prompted by malice, then you should resolve that doubt in defendant's favor, and in such case you can find the defendant guilt of murder without malice aforethought.

"In this connection, if you find from the evidence beyond a reasonable doubt that the defendant is guilty of murder, then you may consider the condition of defendant's mind at the time of the killing, if any, and, as going to show the condition of mind, you may take into consideration all the relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the defendant and the deceased, if any, together with all relevant facts and circumstances in evidence.

"If you have a reasonable doubt as to whether the defendant is guilty of murder at all, whether with or without malice aforethought, then you will find the defendant not guilty."

The appellant argues that "the charge in question literally instructed the jury that if they found Defendant guilty beyond a reasonable doubt of murder, they could *then* consider the condition of the Defendant's mind at the time of the killing. This could mean but one thing to the jury and this that they could consider the condition of his mind in determining whether the murder was with or without malice. This, of course, effectively denied any consideration by the jury of the condition of the Defendant's mind in relation to such issues as intent, premeditation and self defense. Certainly this part of the charge is calculated to mislead the jury."

Both the State and the appellant concede that the trial court was attempting to charge under the provisions of Article 1257a, Vernon's Ann.P.C. 1925, although punishment was not an issue at the guilt or innocence stage of the trial.

Article 1257a, supra, reads in part as follows:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, *which may be considered by the jury in determining the punishment to be assessed.*" (Emphasis added)

At the time of the enactment of this statute in 1927 (Acts 1927, 40th Leg., p. 412, Ch. 274, Sec. 2) the unitary trial was in existence where both the issue of guilt and punishment were passed on at the same trial.

While some early cases held that a charge under Article 1257a should not be given, this court in Wheeler v. State, 156 Tex.Cr.R. 140, 239 S.W.2d 105 (1951), held that it was not error to instruct the jury in accordance with the statute when limited to the issue of punishment. There, this court wrote:

"The legislature has the authority to prescribe rules of evidence, and if the effect of Art. 1257a, Vernon's Ann.P.C., be to limit the use of testimony as to facts and circumstances surrounding the killing and the previous relationship existing between the parties to the question of punishment, then such testimony could no longer be offered by the state or by the accused on the question of the condition of mind of the accused, on issues going to the question of guilt, such as on the issue of self-defense upon the theory of the appearance of danger; or upon any question other than that of punishment.

"We think it clear that the legislature had no such intention, but on the other hand intended, in connection with the submission of malice aforethought and murder without malice, to point out the evidence mentioned as proper for consid-

eration by the jury in arriving at the punishment to be assessed in the event the defendant was found guilty.

"In Spicer v. State, 120 Tex.Cr.R. 440, 46 S.W.2d 685, the provisions of Art. 1257a, Vernon's Ann.P.C., were given in the charge, the jury being instructed that such matters might be used in determining the punishment in the event they convicted the defendant.

"In Graham v. State, 121 Tex.Cr.R. 343, 51 S.W.2d 401, the jury ws instructed that if they believed beyond a reasonable doubt that the defendant was guilty of murder they might take into consideration the condition of appellant's mind at the time of the killing, and as showing such condition of mind, all relevant facts and circumstances surrounding the killing and the previous relationship existing between the defendant and the deceased might be taken into consideration.

"The charge as here given authorized the consideration of the matters set forth in Art. 1257a, Vernon's Ann.P.C., on the question of punishment 'if any' to be assessed 'in the event you convict the defendant.'

"Insofar as the Hill, Jamison, Riles and Scott cases hold that the substance of Art. 1257a should not be given in the charge, but should serve only as a guide to the court in passing upon the admissibility of testimony, they are, here now, expressly overruled.

"We hold with the Spicer and Graham cases that the charge as given in this case properly instructed the jury in the terms of the statute that they may consider the matters set forth therein in passing upon any punishment they may assess in the event they find appellant guilty."

Cf. Morris v. State, 157 Tex.Cr.R. 14, 246 S.W.2d 184, 186 (1952).

Since the advent of the 1965 Code of Criminal Procedure with its bifurcated trial requirement, see Article 37.07, Vernon's Ann.C.C.P., some confusion prevailed at which stage of the trial a determination should be made of whether the murder was committed with or without malice since this finding determined the penalty to be assessed. See Foster v. State, 493 S.W.2d 812, 813 (Tex.Cr.App.1973).[2]

According to the records of this court the most common practice was for the trial court to submit the issue of malice aforethought and murder without malice at the guilt stage of the trial. In most instances there were no objections to such procedure. In Brazile v. State, 409 S.W.2d 302 (Tex. Cr.App.1973), the defendant offered no evidence at the first stage of the bifurcated trial and the court instructed the jury on both murder with and murder without malice. At the penalty stage of the trial he was denied the right to offer evidence as to his version of the facts and circumstances surrounding the homicide as it bore on the issue of punishment. In reversing this court noted the holding of Foster v. State, supra, and stated that "it would appear proper to submit the issue of malice only during the punishment stage. . . . "

"The fact that appellant uniquely chose to wait until the penalty hearing to present this evidence cannot be held against him now. The fact is, a reading of Art. 1257a, V.A.P.C., would probably lead to the conclusion that the penalty stage is the *proper* stage in which to introduce such testimony."

■ In the instant case, while appellant objected to the portion of the charge mentioned, we do not find any objection to the court submitting the issue of murder with and without malice at the guilt stage of the

2. In Foster v. State, supra, at p. 813, the court stated:
"Since degrees of murder no longer exist, all voluntary killings being murder, the

presence or absence of malice relates only to the punishment." (Cases cited omitted)

trial while the issue of punishment was not then involved and it is questionable whether the charge in the form given should have been given, we cannot conclude, under the circumstances, that reversible error occurred. The issue of murder with or without malice was before the jury at the time,[3] and the court's charge on self-defense and on justification on the grounds of threats clearly instructed the jury they were to consider such defenses from the standpoint of the appellant at the time he acted.

Considering the charge as a whole, we decline to hold that the instructions complained of improperly limited the jury's consideration of the appellant's state of mind. See and compare Wingate v. State, 487 S.W.2d 89 (Tex.Cr.App.1972). See also Article 36.19, Vernon's Ann.C.C.P.

■ Appellant also complains of the trial court's action in admitting the testimony of three witnesses that his reputation for being a peaceful and law-abiding citizen was bad over objection that the witnesses were not properly qualified to state an opinion.

At the guilt stage of the trial, after the appellant had offered a number of reputation witnesses, the State called Joe Stone, a Lubbock police officer assigned to the juvenile division thereof. After Stone related he knew the appellant's reputation, he was taken on voir dire examination in the jury's absence. He related he had discussed appellant's reputation with a Mrs. Welch, who lived in the same block with the appellant, and two police officers. Appellant contends the testimony showed that the witness was relying upon his personal opinion and a discussion of specific acts of misconduct with the other persons and that it does not show he discussed the appellant's reputation. While the cross-examination by appellant's counsel was highly

skilled, we cannot agree with his version of the testimony.

In Weatherall v. State, 264 S.W.2d 429 (Tex.Cr.App.1954), relied upon by appellant, the testimony of the reputation witness "was not based on anything he had heard from other persons."

■ The State also called Roy Roberts and Gilbert Weaver, Principal and Vice Principal of the Dunbar High School, who testified appellant's reputation for being a peaceful and law-abiding citizen was bad.

Appellant argues that since the persons these witnesses had talked to about appellant's reputation were somehow tied to the school community as teachers, students, etc., they were not acquainted with his reputation outside the school community and their testimony should have been excluded. The record reflects the persons with whom the witnesses discussed reputation lived in Lubbock County, and the fact that they all had ties to the school community would affect the weight rather than the admissibility of the evidence.

■ Lastly, appellant contends that the court erred in refusing to instruct the jury not to consider the prosecutor's argument on the weight of public opinion at the punishment phase of the trial.

The argument complained of is as follows:

"MR. CHERRY: May it please the Court, ladies and gentlemen of the jury, like I said you have heard most of my speech. I talked to you about what is the object of our penal code. Two of them, one of them has to do with rehabilitation of the defendant, one with penalizing the defendant. The other deals with suppression of crime. I know that what I am asking you is no easy task,

3. In the event of a finding of guilty the jury's determination of whether the murder was committed with or without malice afore- thought would control the range of punishment to be submitted to the jury at the penalty stage of the trial.

**356**

but I ask you to consider this: What are the school children in our public schools going to think—

"MR. BROWN: Excuse me, Your Honor, I object to this. This is improper argument for him to argue what the school children in our public schools are going to consider, and—

"MR. CHERRY: I withdraw it.

"MR. BROWN: —we move the Court to instruct the jury not to consider it for any purpose.

"THE COURT: The Court will decline to instruct the jury.

"MR. BROWN: Note our exception, please."

The prosecutor's argument is unlike those in Pennington v. State, 171 Tex.Cr.R. 130, 345 S.W.2d 527 (1961), and Cox v. State, 157 Tex.Cr.R. 134, 247 S.W.2d 262 (1952), where in those cases, as relied on by appellant, this court held that the arguments were improper since they constituted an effort on the part of the State to induce the jury to convict the defendant because the people desired a conviction.

The argument in the instant case, though, is not an appeal to the jury to convict because of public opinion. See Bolding v. State, 493 S.W.2d 181 (Tex.Cr.App. 1973); Luna v. State, 461 S.W.2d 600 (Tex.Cr.App.1970); Smith v. State, 418 S.W.2d 683 (Tex.Cr.App.1967).

Appellant's final ground of error is overruled.

For the reasons stated, the judgment is affirmed.

ROBERTS, J., concurs in the result.